CASSETT *v.* UNITED STATES (No. 227). CASSETT & CO. *v.* UNITED STATES (No. 228).[1]

ISAROL, AN AMMONIUM SULPHOICHTHYOLATE—ICHTHYOL.

The importation is a compound obtained by treating crude ichthyol oil with sulphuric acid and neutralizing this with ammonium carbonate. Paragraph 626, tariff act of 1897, is confined to oils, and, so far as it relates to ichthyol, may properly be read, "oils, namely, ichthyol," etc. The particular name by which an ichthyol preparation is known can not determine the question of fact as to whether it is dutiable under that paragraph as ichthyol oil; whether, in truth, it is such a preparation as retains sufficient characteristics of the ichthyol oil to be within the intent and meaning of Congress in enacting paragraph 626. Is the commodity ichthyol oil, must be the true inquiry, for the paragraph covers all ichthyol oils. The importation here is a product of ichthyol, called isarol. Equally with Merck's ichthyol, it is an ammonium sulphoichthyolate, and as such is an oil within the meaning of paragraph 626. It was entitled to free entry as "oil, ichthyol."—United States *v.* Merck (T. D. 29600); G. A. 5703 (T. D. 25376).

United States Court of Customs Appeals, January 23, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7005 (T. D. 30526).

[Reversed.]

*Walter Evans Hampton* for appellants.

*D. Frank Lloyd,* Assistant Attorney General (*Chas. D. Lawrence* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

This is an appeal from a decision of the Board of General Appraisers affirming the action of the collector of customs at Philadelphia in assessing at 25 per cent ad valorem, under paragraph 68 of the act

---

[1] Reported in T. D. 32225 (22 Treas. Dec., 164).

of 1897, as a medicinal preparation the article known as isarol, which is claimed to be ichthyol ammonium, or ammonium ichthyol sulphonate, or ammonium sulphoichthyolate, against the protest of the importer, claiming free entry under paragraph 626 of said act.   Paragraph 626 reads as follows:

Oils: Almond, amber, crude and rectified ambergris, anise or aniseed, aniline, aspic or spike lavender, bergamot, cajeput, caraway, cassia, cinnamon, cedrat, chamomile, citronella or lemon grass, civet, cocoanut, fennel, ichthyol, jasmine or jasimine, juglandium, juniper, lavender, lemon, limes, mace, neroli or orange flower, enfleurage grease, nut oil or oil of nuts not otherwise specially provided for in this act, orange oil, olive oil for manufacturing or mechanical purposes fit only for such use and valued at not more than sixty cents per gallon, ottar of roses, palm, rosemary or anthoss, sesame or sesamum seed or bean, thyme, origanum red or white, valerian; and also spermaceti, whale, and other fish oils of American fisheries, and all fish and other products, of such fisheries; petroleum, crude or refined: *Provided*, That if there be imported into the United States crude petroleum or the products of crude petroleum produced in any country which imposes a duty on petroleum or its products exported from the United States, there shall in such cases be levied, paid, and collected a duty upon said crude petroleum or its products so imported equal to the duty imposed by such country.

The evidence discloses that the commodity the subject of this controversy is known as ichthyol ammonium, sometimes called ammonium ichthyol sulphonate, or ammonium sulphoichthyolate, these terms being used interchangeably.   The article is a compound obtained by the treatment of crude ichthyol oil and treated by sulphonic acid and neutralized by ammonium carbonate.

In the Century Dictionary published in 1890, prior to the enactment of this statute, ichthyol is defined as—

A sirupy liquid with a bituminous odor and taste, prepared by the dry distillation of a bituminous mineral containing fossil fishes.   It has been used externally in the treatment of various skin diseases.

This original substance is described in the National Standard Dispensatory under the name of "ichthyolum," or "ichthyol," used interchangeably, as follows:

The name ichthyol, derived from the Greek, is commercially applied to the ammonium salt of ichthyolsulphonic acid.   Other compounds are designated by prefixing the name of the respective base, as sodiumichthyol, calciumichthyol, etc.

The source of all ichthyol compounds is a crude oil—ichthyol oil—resulting from the destructive distillation of a bituminous rock filled with fossil fish and found in large quantities near Seefeld, in the Tyrol Mountains of Europe, at an elevation of 3,000 to 4,000 feet.   This oil is a brownish-yellow transparent liquid of 0.865 specific gravity, boiling between 100° and 225° C. (212° and 437° F.), and possessing a peculiar penetrating, somewhat aromatic odor.

And in another part, in describing the article commercially known as ichthyol, it is said:

It is a clear, reddish-brown, sirupy liquid with a bituminous odor and taste, soluble in water, glycerin, and in a mixture of equal volumes of ether and alcohol.   Alcohol or ether alone takes up only a part of it; so also petroleum ether.

In the British Pharmaceutical Codex it is said:

Ammonium ichtho sulphonate was introduced and first tested pharmaceutically and in a clinical practice under the trade name of "ichthyol." It is also known under the trade names of "ichtamon," "ichden," "ichthyodine," "ichthosan," "isarol," "piscarol," "thiolin," etc.

It will be noted that paragraph 626 is a paragraph confined to oils. The word "oils" is followed by a colon and by the specific names of the various oils referred to, including ichthyol. It should be read as though it had been printed "oils, namely, ichthyol," etc. Whether it be held therefore that the substance which had been evolved as a commercial product and given the name of ichthyol so far retains the character of oil as to bring it within this paragraph or not, it can not be brought therein by segregating the word ichthyol from the body of the paragraph and treating that single word as designating the proprietary article called ichthyol for free entry to the exclusion of other like substances or the crude oil itself. The paragraph equally covers all ichthyol oils, and unless the product hereinafter referred to as Merck's ichthyol is an oil within the meaning of this paragraph, it is no more admissible under the free list than is the importation under consideration in the present case.

The first case in which this question came before the board was *In re* Merck, G. A. 5703 (T. D. 25376). In that case the importation under consideration was what is known as Merck's ichthyol, which is an ammonium ichthyol sulphonate. It was contended by the Government in that case that this paragraph relates to ichthyol oil and not to ammonium ichthyol sulphonate, which is a chemical salt. The paragraph was held to cover the importation in question, the board saying:

After an exhaustive search for information, it appears, and we find, that the only article which has been known in trade and commerce in the United States as ichthyol is the ammonium salt of the acid above described, which is the article under consideration, and the same is a chemical compound and a nonalcoholic medicinal preparation. This is probably due to the fact that of all the various salts with which the word "ichthyol" is associated it has been in the greatest demand and most extensively used in the practice of medicine. The foreign manufacturers and the domestic importer have applied the name of ichthyol thereto as a trade-mark or name, and it has become so known commonly and commercially.

This case was decided in 1904, and has since been followed to the extent of admitting Merck's ichthyol under paragraph 626.

Just what were the sources of information upon which this finding of the board in Merck's case was based is not apparent. But as the authorities on pharmaceutical chemistry treat the ammonium sulpho-compound of crude ichthyol as ichthyol, it is not believed that this escaped the notice of the board. If it was the purpose of the board to make the dutiable character of this material depend upon whether an importer had adopted a trade-mark giving the substance that

name, we can not follow the board in that holding, and some color is given to the claim that such was the purpose of the board by the case of In re Sykes (T. D. 27323), as well as in the holding in the present case.

In another respect the court is unable to accept the reasoning of the board in Merck's case (T. D. 25376). The contention of the Government in that case, that the article the free entry of which was authorized by paragraph 626 was ichthyol oil, was met by the following language:

In reply, it appears that the oil used in the manufacture of this article is a rock oil or petroleum which carries in chemical combination a high percentage of sulphur and occurs in strata of the earth containing fossilized remains of fish and marine animals. Free entry is provided in paragraph 626 for petroleum, crude or refined, unless produced in a country which imposes a duty on petroleum exported from the United States, in which case it is made subject to a duty equal to the duty imposed by such country. It is therefore clear that the provision for ichthyol was not intended to cover the crude petroleum used in the manufacture of the article under consideration.

We think this conclusion by no means follows. Ichthyol oil, as before indicated, was very clearly provided for. This is a more specific provision than petroleum, crude or refined. While ichthyol oil may be a kind of petroleum, all petroleum is not ichthyol oil. But if we assume that it is, the fact that crude petroleum is made subject to duty when imported from those countries which impose a duty upon petroleum or its products exported from the United States, this fact would not operate to take petroleum or any species of petroleum out of the paragraph bodily and deny it free entry in all cases. Treating Merck's case, however, as deciding the question which was really presented to the board, we find that it determines that sulphoichthyol ammonium, which was imported under the name of ichthyol, was entitled to free entry.

The Circuit Court, in Merck & Co. v. United States (177 Fed. Rep., 482), in an opinion by Judge Martin, said:

If one compound of ichthyol is free, why not the others? The only answer is that ichthyol ammonium, although a compound and a medicinal preparation, is by usage in the trade designated as ichthyol, and therefore ichthyol ammonium should be admitted free, while the other compounds of ichthyol must pay a duty.

The finding that ammonium ichthyol sulphonate had become known to the trade and commerce as ichthyol prior to the enactment of the act of 1897 having been made and followed all these years, and the Government in the present case not appearing to contest the correctness of that decision, we have only to deal with the question of whether the present article should be distinguished from Merck's ichthyol.

The decision of the board rested upon the view that the importers had failed to show that isarol is commercially known as ichthyol and that the two articles are not chemically identical, although it was said

that a superficial examination and comparison of their physical qualities showed that they resemble each other. This conclusion again rests upon the view, apparently, that Merck & Co. have by the adoption of the name "ichthyol" been able to exclude all other products having the same qualities and the same derivation from free entry while themselves enjoying that privilege.

.This is a mistaken view of the use of the word "ichthyol" in the paragraph in question. If Merck's ichthyol was an ichthyol oil, it was properly admitted, otherwise not. A treatment of the oil which still retains some of its characteristics and fits it for use may not have been sufficient to exclude it from free entry. But, nevertheless, the authority to admit it must be found in the fact that ichthyol oil is provided for in the free list.

The name by which the particular preparation is known can not determine the question of fact as to whether it is an ichthyol oil or such a preparation of ichthyol as yet retains sufficient of the characteristics of ichthyol oil to be within the intent and meaning of Congress in enacting this paragraph. Resolved by this test, the questions in this case are somewhat simplified. There is no chemical identity between these two articles for the reason that both contain a complicated ingredient whose precise chemical constituents do not seem to have been determined, and there can be no chemical identity between such different compounds except by chance.

Benjamin L. Murray, a chemist in the employ of Merck & Co., who was made a witness for the Government, testified:

Q. Now, referring to the analysis that you made of the ichthyol regarding the percentage of sulphur, taking the ichthyol samples as a class, did you find any variation in the percentage of sulphur?—A. Yes; there is always a variation, because the stuff is a mixture.

Q. In some cases you found a greater quantity of sulphur and in some cases less? Is that right?—A. Yes.

Q. And you found the same thing as to the isarol? Is that it?—A. Well, I found a variation which is quite a good deal wider variation in this isarol.

And in another place he testified as follows:

Q. Now, are ichthyol and isarol chemical entities?—A. No; neither one of them is.

Q. Do you know of any chemical formula for ichthyol?—A. I have seen chemical formulas for it, but there is not any real chemical formula for it.

Q. Why not?—A. Because it is a mixture of several ingredients. Chemical formulas are applicable only to single ingredients.

Q. And the same is true of isarol, is it?—A. I have never seen a formula for isarol, but there could not possibly be one on the same grounds.

The testimony shows that the preparation involved in this case is an ammonium sulphoichthyolate, just as is Merck's ichthyol. There was an attempt to show a difference between the appearance of the two articles as to color, and there doubtless is a slight difference, which is accounted for by Prof. Sadtler, whose testimony was introduced by the importers, as probably arising by a slight difference

in the degree of temperature at which the original crude oil had been obtained or slightly. different conditions under which the sulphonation had been effected. The same witness testified that when he analyzed Merck's ichthyol he found it to correspond in the main with the chemical qualities of ichthyol ammonium or ammonium sulphoichthyolate, and that he found isarol to correspond to that character equally.

But as to the question of color, it is significant that while the testimony offered on behalf of the Government in this case tends to show that Merck's ichthyol is a red-brown solution with green florescence, and that isarol is a brown solution, the Oxford Dictionary defines ichthyol as "a brownish-yellow sirupy liquid of disagreeable odor obtained by the dry distillation of bituminous rocks containing remains of fossil fishes." It is altogether reasonable to assume that this difference in color produced in the ammonium sulphoichthyolate by different methods should vary slightly. The same thing may be true of the slightly differing quantities of sulphur found in the two preparations or in other characteristics, as it would be extremely unlikely that an ammonium ichthyol sulphonate derived from the original distillation would, by two different processes, or perhaps by two different chemists, prove exactly identical. Indeed this is not found to be the case of analyses of different samples of Merck's ichthyol.

It is enough to say that we are fully satisfied that this product of isarol is equally with Merck's ichthyol an ammonium sulphoichthyolate, and if ichthyol is entitled to free entry as an ammonium sulphoichthyolate, isarol, being substantially identical in all essentials, is entitled to the same consideration.

It remains to consider whether ammonium ichthyol sulphonate is an oil within the meaning of this paragraph. We think it should be held to be entitled to free entry on the principle enunciated in United States v. Merck (T. D. 29600). In that case the Court of Appeals of the Second Circuit had under consideration a provision for "salts of cinchona bark," and the question presented was whether euquinine should be admitted free. Euquinine is a preparation more or less directly from cinchona bark for use in medicine. Its medicinal qualities are substantially the same as those of sulphate of quinia and other preparations from the same source. The board had held that it "is not a salt of cinchona bark, but it is an ester and a medicinal preparation, in the preparation of which alcohol is used," and sustained the collector. The court said:

> There is a great deal of chemical testimony in the case which we do not find it necessary to discuss. The word "ester" is a term of the German chemists and applies to what the English chemist calls compound ethers. The weight of the expert evidence is to the effect that an ester is not in the strict use of chemical nomenclature a salt, although some of the witnesses say it is "an ethereal salt." But that is not determina-

tive of the question.. Congress did not use the language of chemical science in paragraph 647. It provides for "salts of cinchona bark," and all the experts agree that there is no such thing. What it meant, undoubtedly, was that quinine (sulphate of quinia) and the other derivatives from cinchona bark which preserved the controlling or essential medicinal element of the bark should be admitted free of duty. Since the group thus designated is a more specific one than that covered by paragraph 67, "medicinal preparations containing alcohol," etc., we concur with the judge who heard the cause at circuit.

See also Schoellkopf *v.* United States (71 Fed. Rep., 694).

Ammonium ichthyol sulphonate is an oily substance. The evidence as to the importation in the present case given by the witnesses for the Government shows that oily globules are present in both Merck's ichthyol and that of the present importer. While it is not the native oil, it is still an oily substance, and as this substance is in Merck's case, *supra,* held to be the only product of ichthyol of commerce, and as it appears to be conceded that Merck's ichthyol is within the terms of this paragraph, isarol should be held to be also.

The decision of the board is *reversed.*