UNITED STATES *v.* ERNEST E. MARKS Co. (No. 4336) [1]

---

[1] C. A. D. 173.

United States Court of Customs and Patent Appeals, May 5, 1941

*Charles D. Lawrence,* Acting Assistant Attorney General (*Daniel G. McGrath,* special attorney, of counsel), for the United States.

*J. Milton Guy, Jr.,* for appellee.

[Oral argument April 15, 1941, by Mr. McGrath and Mr. Guy]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACK-SON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This appeal involves the proper classification and assessment with duty of certain merchandise consisting of fish balls imported from Norway on May 15, 1939. The merchandise was classified and assessed with duty by the Collector of Customs at the port of Chicago at 25 per centum ad valorem under the provisions of paragraph 718 (b) of the Tariff Act of 1930.

The importer, appellee, protested against such assessment of duty, claiming the merchandise, by virtue of the generalization clause contained in the Reciprocal Trade Agreement Act of June 12, 1934 (48 Stat. 943), to be dutiable at 15 per centum ad valorem under the same paragraph as modified by the reciprocal trade agreement entered into between the United States and the United Kingdom of Great Britain, hereinafter called the "trade agreement," effective January 1, 1939, T. D. 49753, 74 Treas. Dec. 253.

At the trial before the Customs Court the cause was submitted upon an oral stipulation of counsel, which reads as follows:

It is stipulated that the commodity in question here is fish, prepared or preserved, packed in airtight containers weighing with their contents not more than 15 pounds each, and is not fish packed in oil or in oil and other substances. The commodity is not herring, smoked or kippered or in tomato sauce, packed in immediate containers weighing with their contents more than one pound each. * * *

Paragraph 718 of the Tariff Act of 1930, as originally enacted, reads as follows:

PAR. 718. (a) Fish, prepared or preserved in any manner, when packed in oil or in oil and other substances, 30 per centum ad valorem.

(b) Fish, prepared or preserved in any manner, when packed in air-tight containers weighing with their contents not more than fifteen pounds each (except fish packed in oil or in oil and other substances): Salmon, 25 per centum ad valorem; other fish, 25 per centum ad valorem.

The provision in said trade. agreement here under consideration reads as follows:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
| --- | --- | --- |
| 718 (b) | Fish, prepared or preserved in any manner, when packed in air-tight containers weighing with their contents not more than fifteen pounds each (except fish packed in oil or in oil and other substances): Herring, smoked or kippered or in tomato sauce, packed in immediate containers weighing with their con- tents more than one pound each____ | 15% ad val. |

The trial court sustained the protest, holding in effect that the provision of the trade agreement above quoted is a substitute for paragraph 718 (b) of said tariff act, and that by virtue thereof the rate of duty upon all fish described therein was reduced to 15 per centum ad valorem, said rate being applicable to the fish described preceding the colon as well as to the herring described following the colon.

Judgment was entered accordingly, from which the Government took this appeal.

The issue before us is whether the rate of 15 per centum ad valorem applies to any fish other than the herring described following the colon in paragraph 718 (b) as it appears in the trade agreement.

It will be observed that the language in the trade agreement preceding the colon is identical with the language of paragraph 718 (b) of said tariff act preceding the colon; that the language preceding the colon in paragraph 718 (b) of said tariff act is descriptive only, and that the rate of duty is there fixed by the language following the colon, reading: "Salmon, 25 per centum ad valorem; other fish, 25 per centum ad valorem."

In the case of *Markell et al.* v. *United States,* 16 Ct. Cust. Appls. 518, T. D. 43239, we said:

Commas, semicolons, colons, dashes, and other forms of punctuation have their place in ascertaining the meaning of tariff paragraphs, and ordinarily, in such construction, they must, in accordance with the rules of grammatical construction, be given full weight, but if their inclusion or omission under this rule brings an anomalous result contrary to the manifest intention of Congress, the grammatical construction must yield.   *   *   *

Funk & Wagnalls New Standard Dictionary defines the word "colon" as follows:

colon.   *   *   *   1. *Gram.*   A punctuation-mark (:) used (1) as a sign of apposition or equality to connect one clause with another that explains it, as in introducing an enumeration or catalog,   *   *   *.

A colon is defined in Webster's New International Dictionary (2d. edition) as follows:

colon, *n.* * * * 1. The character [:] used in writing and printing as a mark of: *a* Anticipation after a formal introduction or other preparatory expression to indicate that what follows constitutes an explanation, example, definition, restatement, or recapitulation, or a quotation, an appositive, or a list (esp. after or in place of such expressions as *namely, as follows, to wit, viz.*); * * *

This court in the case of *Cassett* v. *United States*, 2 Ct. Cust. Appls. 465, T. D. 32354, in considering the effect of a colon in a tariff statute, said:

It will be noted that paragraph 626 is a paragraph confined to oils. The word "oils" is followed by a colon and by the specific names of the various oils referred to, including ichthyol. It should be read as though it had been printed "oils, namely, ichthyol," etc. * * *

It is clear from the foregoing that if the ordinary rules of grammatical construction be followed, the language before the colon in paragraph 718 (b) of the trade agreement must be regarded as descriptive only, and that the 15 per centum ad valorem duty provided therein applies only to the language following the colon, relating to herring. We find nothing in the context of the trade agreement to indicate that the application of the ordinary rules of grammatical construction in the interpretation of paragraph 718 (b) of the agreement would bring an anomalous result contrary to the intent of the negotiators of the agreement. An examination of other portions of the trade agreement convinces us that in the use of colons therein the ordinary rules of grammatical construction were intended to apply.

To illustrate, paragraph 923 of the Tariff Act of 1930 is one of the paragraphs involved in the trade agreement. The provision in said agreement relating to the paragraph appears as follows:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
|---|---|---|
| 923 | Manufactures, wholly or in chief value of cotton, not specially provided for: Terry-woven towels valued at 45 cents or more each; printers' rubberized blanketing; molded cotton and rubber packing; fishing nets valued at 50 cents or more per pound; ladder tapes; badminton nets; and yarns in chief value of cotton containing wool_____ | 30% ad val. |

Paragraph 923 of the Tariff Act of 1930 reads as follows:

PAR. 923. All manufactures, wholly or in chief value of cotton, not specially provided for, 40 per centum ad valorem.

Under appellee's theory of construction and that of the trial court, applied to said paragraph 923, the provision in the trade agreement above quoted should be regarded as a complete substitute for paragraph 923 of said tariff act, the colon in the trade agreement should be disregarded, and any manufacture wholly or in chief value of cotton, not specially provided for, should be subject to a duty of only

30 per centum ad valorem instead of 40 per centum ad valorem as provided in paragraph 923 of the tariff act. It seems too plain for argument that the 30 per centum ad valorem rate provided in said provision was intended to apply only to the articles specifically named following the colon in the above quotation relating to this paragraph, and was not intended to apply to every manufacture wholly or in chief value of cotton, not specially provided for. Were it otherwise, there would have been no occasion for the enumeration of specific articles following the colon.

The same observation is applicable to paragraphs 919, 1006, and to many other paragraphs as set forth in the trade agreement.

Furthermore, there does not seem to be any possible reason why the negotiators of the trade agreement should have provided for a reduction of duty upon salmon, which is *eo nomine* provided for in paragraph 718 (b) of the Tariff Act of 1930 at 25 per centum ad valorem. Under appellee's construction, and under the construction given by the trial court, the provision of paragraph 718 (b) of the trade agreement reduced the tariff upon salmon from 25 per centum to 15 per centum ad valorem; and yet it appears from an official publication of our Government that there were, on or about the time of the negotiation of said trade agreement, no importations from the United Kingdom of salmon embraced in paragraph 718 (b) of the Tariff Act of 1930.

A document issued by the United States Tariff Commission in 1937 entitled "Imports Into The United States For Consumption By Countries For the Calendar Year 1936" shows all importations of salmon embraced in paragraph 718 (b) of the tariff act for the year 1936, and shows that there were no importations of salmon from the United Kingdom, but that herring and sardines subject to the provisions of said paragraph 718 (b) were imported to the extent of 1,360,361 pounds, and other fish to the extent of only 4,788 pounds.

It is thus easy to understand why the duty upon salmon embraced in paragraph 718 (b) of the tariff act was of no importance to the negotiators of the trade agreement, but that the duty upon herring was of very great importance.

Moreover, the Summary of Tariff Information, 1929, prepared for the use of the Committee on Ways and Means of the House of Representatives, upon page 1126, under the heading "SALMON, CANNED," states:

*Production.*—The annual world production of canned salmon averages about 400,000,000 pounds. In 1927 the United States produced 69 per cent, Canada 18 per cent, Siberia 11 per cent, and Japan 2 per cent of the world output. * * *

Canada is not included in said trade agreement.

It is very clear from the foregoing that, by applying the rules of grammatical construction to paragraph 718 (b) as it appears in the trade agreement, no anomalous result contrary to the intentions of

the negotiators of the trade agreement is brought about, for we must presume that they were not interested in reducing the duty upon any fish other than herring, inasmuch as there were no importations from the United Kingdom of salmon subject to the provisions of paragraph 718 (b) of said tariff act, and only 4,788 pounds of fish other than salmon and herring subject to its provisions.

While we do not rely upon the history of the trade agreement in arriving at our conclusion, we think it proper to observe that there is nothing in that history to indicate that it was the intention of the negotiators of the trade agreement to reduce the duty upon any fish embraced in paragraph 718 (b) of said tariff act other than herring.

We think the trade agreement provision under consideration is not happily worded. As suggested by appellee's counsel, it would have been simple to have added an additional classification to paragraph 718 (b) of the tariff act reading as follows:

Herring, smoked or kippered, or in tomato sauce (not packed in oil or in oil and other substances), packed in immediate air-tight containers weighing with their contents more than one pound and not more than fifteen pounds,—fifteen per centum ad valorem.

If the language had been so framed, the question here involved could not have arisen. However, we must construe the provision as written, and as written we think its fair construction is that only the duty upon herring was reduced, and that, as modified, paragraph 718 (b) of said tariff act reads as follows:

PAR. 718. (b) Fish, prepared or preserved in any manner, when packed in air-tight containers weighing with their contents not more than fifteen pounds each (except fish packed in oil or in oil and other substances): Herring, smoked or kippered or in tomato sauce, packed in immediate containers weighing with their contents more than one pound each, 15 per centum ad valorem; salmon, 25 per centum ad valorem; other fish, 25 per centum ad valorem.

For the reasons herein stated, the judgment appealed from is *reversed.*