LEHN & FINK (INC.) *v.* UNITED STATES (No. 2374).[1]

1. CONSTRUCTION, PARAGRAPH 1549, TARIFF ACT OF 1922—GRAMMAR GUIDING, BUT NOT CONTROLLING—"NOT SPECIALLY PROVIDED FOR."

While it is the ordinary grammatical rule that dependent or modifying clauses and phrases are related to their nearest antecedents, such rule must yield if the intent of Congress otherwise appears. In paragraph 1549, tariff act of 1922, the phrase "not specially provided for" refers to all that part of the paragraph following the eo nomine designations, and modifies "all other distillates," "all mixtures," and "all other materials or products." Its relation is not restricted to its nearest antecedent, "all other materials or products."

2. CONSTRUCTION, PARAGRAPHS 27 AND 1549, TARIFF ACT OF 1922—ALL LANGUAGE GIVEN FORCE.

Paragraphs 27 and 1549, tariff act of 1922, the first taxing certain coal-tar products and the second admitting certain coal-tar products free, are to be construed together and all language in each paragraph given full force and effect. This is accomplished by holding that a product which meets *either* of the two distillation tests in paragraph 27 is classifiable thereunder as being specially provided for therein, notwithstanding that it also meets the distillation test in paragraph 1549.

3. CONSTRUCTION, RELATIVE SPECIFICITY—"NOT SPECIALLY PROVIDED FOR."

The words "not specially provided for" do not lessen the specificity of the language preceding them.

4. CONSTRUCTION, PARAGRAPHS 27 AND 1549, TARIFF ACT OF 1922—CHANGE OF LANGUAGE SIGNIFYING CHANGE OF MEANING—KNOWLEDGE OF JUDICIAL AND ADMINISTRATIVE HOLDINGS IMPUTED TO CONGRESS.

In the tariff acts of 1897, 1909, and 1913, and the revenue act of 1916 cresol was on the free list, and, in 1918, the Treasury Department and the Board of United States General Appraisers had held cresol, cresylic acid, and liquid carbolic acid synonymous. Knowledge of such holding must be imputed to Congress; and the omission of cresol from the free list of 1922 signifies a change of policy regarding it and its synonyms. The addition of a new test (the double distillation one of paragraph 27) for coal-tar distillates, the manifest purpose of the new act to encourage American manufactures, and the collocation in the free list paragraph (1549) of the *cruder* coal-tar products and in the duty paragraph (27) of the more *refined*, all tend to this holding: That such cresylic acid, cresol or liquid carbolic acid as is sufficiently refined to meet *either* of the two distillation tests of paragraph 27, tariff act of 1922, is dutiable thereunder, the cruder product being admissible free of duty under paragraph 1549.

5. CRESYLIC ACID.

Paragraph 27, tariff act of 1922, taxes tar distillates (1) "which on being subjected to distillation yield in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids equal to or more than 5 per centum of the original distillate" or (2) "which on being subjected to distillation yield in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate." Paragraph 1549 admits duty free tar distillates "which on being subjected to distillation yield in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids less than 5 per

[1] T. D. 40519.

centum of the original distillate." Cresylic acid which meets the test of paragraph 1549 and also the second test of paragraph 27, is dutiable under paragraph 27.

## United States Court of Customs Appeals, November 22, 1924

APPEAL from Board of United States General Appraisers, G. A. 8736 (T. D. 39992)

[Affirmed.]

*Comstock & Washburn* (*George J. Puckhafer* and *Henry J. Rode* of counsel) for appellant.

*William W. Hoppin*, Assistant Attorney General (*Samuel M. Richardson*, special attorney, of counsel), for the United States.

[Oral argument October 21, 1924, by Mr. Puckhafer and Mr. Richardson]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The importation in this case is cresylic acid in drums. The collector assessed it for duty at 40 per cent ad valorem, and 7 cents per pound under paragraph 27, tariff act of 1922, the essential parts of which are:

27. Coal-tar products: * * * metacresol having a purity of 90 per centum or more, naphthalene which after the removal of all water present has a solidifying point of seventy-nine degrees centigrade or above, orthocresol having a purity of 90 per centum or more, paracresol having a purity of 90 per centum or more; all the foregoing products in this paragraph whether obtained, derived, or manufactured from coal tar or other source; all distillates of coal tar, blast-furnace tar, oil-gas tar, and water-gas tar, which on being subjected to distillation yield in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids equal to or more than 5 per centum of the original distillate or which on being subjected to distillation yield in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate; all similar products by whatever name known, which are obtained, derived, or manufactured in whole or in part from any of the products provided for in this paragraph, or from any of the products provided for in paragraph 1549; all mixtures, including solutions, consisting in whole or in part of any of the foregoing products provided for in this paragraph, except sheep dip and medicinal soaps; all the foregoing products provided for in this paragraph, not colors, dyes, or stains, color acids, color bases, color lakes, leuco-compounds, indoxyl, indoxyl compounds, ink powders, photographic chemicals, medicinals, synthetic aromatic or odoriferous chemicals, synthetic resinlike products, synthetic tanning materials, or explosives, and not specially provided for in paragraph 28 or 1549, 40 per centum ad valorem based upon the American selling price (as defined in subdivision (f) of section 402, Title IV) of any similar competitive article manufactured or produced in the United States, and 7 cents per pound: * * *

The Board of General Appraisers, on protest and appeal, affirmed the decision of the collector, and the importer appeals, claiming free entry of the goods under paragraph 1549 of the same act, which is as follows:

1549. Coal-tar products: Acenaphthene, anthracene having a purity of less than 30 per centum, benzene, carbazole having a purity of less than 65 per

centum, cumene, cymene, fluorene, methylanthracene, methylnaphthalene, naphthalene which after the removal of all the water present has a solidifying point less than seventy-nine degrees centigrade, pyridine, toluene, xylene, dead or creosote oil, anthracene oil, pitch of coal tar, pitch of blast-furnace tar, pitch of oil-gas tar, pitch of water-gas tar, crude coal tar, crude blast-furnace tar, crude oil-gas tar, crude water-gas tar, all other distillates of any of these tars which on being subjected to distillation yield in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids less than 5 per centum of the original distillate, all mixtures of any of these distillates and any of the foregoing pitches, and all other materials or products that are found naturally in coal tar, whether produced or obtained from coal tar or other source, and not specially provided for in paragraph 27 or 28 of Title I of this Act.

No issue of fact is here presented to us. It is admitted that the cresylic acid imported is a distillate of coal tar which, on being subjected to distillation, yields in the portion distilling below one hundred and ninety degrees centigrade, a quantity of tar acids less than 5 per cent of the original distillate and when subjected to distillation yields in the portion distilling below two hundred and fifteen degrees centigrade, a quantity of tar acids more than 75 per cent of the original distillate.

There is accordingly but one question of law involved: Is the material imported within the scope of paragraph 27, or is it free of duty under paragraph 1549?

Paragraph 1549, tariff act of 1922, places upon the free list certain coal-tar products. It first specifies eo nomine, certain products. It is manifest, from a consideration of these products so named, that the Congress was intending to admit free of duty raw materials or products but little advanced for the use of American manufacturers; for example, " anthracene having a purity of less than 30 per centum," " carbazole having a purity of less than 65 per centum," " napthalene which, after the removal of all the water present, has a solidifying point less than seventy-nine degrees centigrade," creosote oil, pitches of various tars and crude tars. If reference is made to any standard work on coal-tar derivatives as to the composition and properties of the various products identified eo nomine, in paragraph 1549, it will be found that each and all of them are crude materials, little used themselves, but highly valuable for the various products to be derived therefrom by various chemical and manufacturing processes.—Dictionary of Applied Chemistry (Thorpe); Coal Tar and Ammonia (Lunge); Allen's Commercial Organic Analysis (Vol. III).

Paragraph 1549, after specifying the above named products, then includes " all other distillates of any of these tars which on being subjected to distillation yield in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids less than 5 per centum of the original distillate." The paragraph then provides for any mixtures of the foregoing distillates and pitches, and then adds this language: " and all other materials or products that are found

naturally in coal tar, whether produced or obtained from coal tar or other source, and not specially provided for in paragraph 27 or 28 of Title I of this Act."

It is apparent that the language "and not specially provided for, etc." refers to all that part of the paragraph following the eo nomine designations of products and would thus include "all other distillates," "all mixtures," "and all other materials or products." It is claimed by appellant that the "not specially provided for" clause should apply only to "all other materials or products," its last antecedent, and reference is made to Irwin & Co. v. United States (2 Ct. Cust. Appls. 296; T. D. 32039). It is true that the opinion in the case cited recognizes this as the usual rule of grammatical construction, but also comments as follows:

Such a rule is, however, only the beginning of a real inquiry into the subject, because, manifestly, it must yield if other and controlling reasons appear to the contrary.

The language of paragraphs 27 and 1549 is to be construed together and every effort is to be made to give full force and effect to all language in each paragraph.—United States v. Ninety-nine Diamonds (139 Fed. 961); Sonneborn Sons v. United States (1 Ct. Cust. Appls. 443; T. D. 31504).

Thus construed, "all other distillates of any of these tars which on being subjected to distillation yield in the portion distilling below one hundred and ninety degrees centigrade, a quantity of tar acids less than 5 per centum of the original distillate," will include only such distillates as are not provided for in the double test specified in paragraph 27, namely, such distillates as will either yield in the portion distilling below 190 degrees centigrade a quantity of tar acids equal to, or more than 5 per cent of the original distillate, or in the portion distilling below 215 degrees centigrade a quantity of tar acids equal to or greater than 75 per cent of the original distillate. In other words, if the product met either of the tests in paragraphs 27 provided, it was "specially provided for in paragraph 27."

But it is pointed out that paragraph 27 also contains the language: "All the foregoing products * * * not specially provided for in paragraph 28 or 1549," and it is therefore contended that the import in question, meeting the test provided for in paragraph 1549, was specially provided for therein, and thus excluded from paragraph 27

To adopt such a construction would abrogate and nullify the second test provided for in paragraph 27. In such cases, if a distillate yielded less than 5 per cent of tar acids, ipso facto it would come within paragraph 1549 and no second test could be had. Such a construction does violence to the language used, and amounts to a judicial repeal of a statutory enactment. The courts do not favor such a construction.

Furthermore, no such construction is necessary. The language "not specially provided for in paragraph 1549," as it appears in paragraph 27, may be given all the force which its wording intends, and yet does not apply to the distillate in question here.

We have held, in several instances, that the words "not specially provided for," in a paragraph do not lessen the specificity of the preceding language in the paragraph.—Lowenthal & Co. *v.* United States (6 Ct. Cust. Appls. 209 [218], T. D. 35464); United States *v* Meyer & Lange (8 Ct. Cust. Appls. 27 [31], T. D. 37163).

Cresylic acid, the article of importation here, has never been designated eo nomine, in our tariff laws. In the tariff acts of July 24, 1897 (par. 524), August 5, 1909 (par. 536), and October 3, 1913 (par. 452), and the revenue act of September 8, 1916 (sec. 500), cresol was upon the free list. In a communication from the Treasury Department to the collector at the port of New York (T. D. 35667), the department held that "cresylic acid" could be classified either under the designation of "carbolic acid" under paragraph 387, tariff act of October 3, 1913, or as "cresol" under paragraph 452 of the same act. On August 9, 1918, the Board of General Appraisers held, in passing upon the dutiability of an imported article of similar character to that now before this court: "We think that the common meaning of the terms used as shown by the dictionary definition and other literature on the subject establishes that the three terms, cresol, cresylic acid, and liquid carbolic acid, are synonomous."—T. D. 37740 (G. A. 8192), p. 58 [60].

Those rulings were in full force and effect when the tariff act of 1922 was in preparation. Congress is presumed to have had full knowledge of them.—Aitken, Son & Co. *v.* United States (6 Ct. Cust. Appls. 232, 233, T. D. 35468); United States *v.* Douglas & Berry (6 Ct. Cust. Appls. 100, T. D. 35342); Jackson *v.* United States (2 Ct. Cust. Appls. 70 [73], T. D. 31629); United States *v.* Wakem & McLaughlin (2 Ct. Cust. Appls. 411 [418], T. D. 32170). With this knowledge, Congress dropped cresol from the free list in the tariff act of 1922, and must be presumed to have intended some change of policy by this omission.—Stein, Hirsch & Co. *v.* United States (6 Ct. Cust. Appls. 154, T. D. 35397); Kupfer Bros. *v.* United States (7 Ct. Cust. Appls. 86, T. D. 36423). As was said in United States *v.* Marsching (1 Ct. Cust. Appls. 216 [218], T. D. 31257):

We do not think that in a case like this where the essential words supporting the construction contended for have been expressly omitted by Congress, the courts can by any rule or method of construction read back into the act such words.

Congress omitted cresol from the free list in the act of 1922. It then inserted a new test for the dutiability of coal tar distillates in the language found in paragraph 27, namely:

*   *   *   all distillates of coal tar, blast-furnace tar, oil-gas tar, and water-gas tar, which on being subjected to distillation yield in the portion distilling below one hundred and ninety degrees centigrade a quantity of tar acids equal to or more than 5 per centum of the original distillate or which on being subjected to distillation yield in the portion distilling below two hundred and fifteen degrees centigrade a quantity of tar acids equal to or more than 75 per centum of the original distillate.

The intent to be reasonably inferred from this is that Congress did not intend that all cresol or liquid carbolic acid or cresylic acid should be thenceforth admitted free of duty, but that the better grades of these products should pay a duty. In other words, the plain intent would seem to be to protect the American cresol or cresylic acid and other similar industries. That there is such an industry in the production of cresylic acid appears from the testimony taken before the Board of General Appraisers, pp. 9 and 12, transcript, in which it is stated that one American producer, the Barrett Co., produces annually 500,000 gallons of cresol, "including not only cresylic acid, but meta cresol, ortho cresol and para cresol." The following statement is made in a public document entitled "A Statement of Information in the Matter of Phenol and Cresylic Acid, the Subject of a Public Hearing, January 24, 1924," issued by the United States Tariff Commission, p. 12:

CRESYLIC ACID.—*Domestic production.*—The production of cresylic acid is largely in the hands of one corporation. This concern has over twenty tar distillation plants located in various parts of the country at which they distill coal tar ·purchased· from·,by-·product··coke ·oven ·or gas plants. · The crude tar acid fractions produced at these plants are shipped to a central plant, where cresylic acid and phenol are made from the crude tar acid as explained above.

The total potential capacity of domestic producers of cresylic acid from domestic tars is roughly 9,500,000 pounds. Although there has been a greatly increased demand for cresylic acid and an effort on the part of the domestic producers to increase their output, the domestic production has been at about one-half of the maximum capacity or about 4,750,000 pounds.

The testimony discloses that cresylic acid is a commercial article varying greatly in its content. Sometimes it contains pyridine. It varies in its content of phenol between 2 per cent and 15 per cent. The tar acids distill from it in varying quantities from 140 degrees centigrade to a temperature of over 220 degrees centigrade, according to the grade of distillate. These varying qualities of cresylic acid are probably the reason for the double test provided in paragraph 27.

The Board of General Appraisers held the importation in this case dutiable under paragraph 27. With this decision we concur and the judgment of the Board of General Appraisers is therefore *affirmed.*