L. R. MARKELL ET AL. *v.* UNITED STATES (No. 3123)[1]

United States Court of Customs Appeals, February 16, 1929

*Lawrence A. Harper* for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein*, special attorney, of counsel), for the United States.

[Oral argument December 14, 1928, by Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The issue presented in this case is solely confined to the proper construction of paragraph 1456 of the Tariff Act of 1922, the pertinent portions of which read as follows:

PAR. 1456. Umbrellas, parasols, and sunshades covered with material other than paper or lace, not embroidered or appliquéd, 40 per centum ad valorem; * * *.

Merchandise, imported from Hong Kong, China, described on the invoices as paper parasols, bamboo parasols, and bamboo umbrellas,

---

[1] T. D. 43239.

were assessed for duty at 45 per centum ad valorem under paragraph 407 of the Tariff Act of 1922, which reads in part as follows:

PAR. 407. * * * all articles not specially provided for, wholly or partly manufactured of rattan, bamboo, osier, or willow, 45 per centum ad valorem.

Several claims for rates of duty lower than that assessed were made in the protests but were all abandoned before the court below, and here it seems to be conceded that if the goods are not dutiable under paragraph 1456, *supra*, for umbrellas, parasols, and sunshades, they are dutiable under paragraph 407, *supra*, as articles partly manufactured of bamboo.

There are a number of protests and answers to the same by the appraiser which are set out in the record. One of such answers follows and shows the reasons and authority for the action of the collector:

The merchandise covered by this protest consists of paper parasols. These parasols are made with bamboo handles and ribs and for that reason were returned for duty as articles in part of bamboo at 45 per centum ad valorem under paragraph 407. This classification has recently been approved by the Court of Customs Appeals on similar merchandise in its decision published in T. D. 41575.

The protests were overruled by the court below, and the collector's classification was affirmed.

There were no exhibits nor testimony in the case.

We think the Government has properly stated the issue in its brief as follows:

The issue in the case resolves itself down to this point: Does the omission of a comma after the word "sunshades" in paragraph 1456, *supra*, confine the qualification "covered with material other than paper or lace," etc., *only* to the word "sunshades"; or, in other words, did Congress intend to include umbrellas and parasols, as well as sunshades, under the qualification above quoted, in the enactment of the said paragraph?

The Government in this brief contends that *each* of the articles mentioned are qualified by the words "covered with material other than paper or lace," etc. (Italics quoted.)

Appellants' position may be stated as being controlled entirely by the argument that the omission by Congress of a comma after the word "sunshades" evidences an intent that "covered with material other than paper" shall modify "sunshades" only and is not extended to "umbrellas" and "parasols," and that "Under the strict rules of grammatical construction a qualifying phrase 'modifies and has reference only to its immediate antecedent.'" The cases of *Thos. Boag & Co. et al.* v. *United States*, T. D. 42286, 51 Treas. Dec. 1020, and *Schneider Bros. & Co.* v. *United States*, 13 Ct. Cust. Appls. 519, T. D. 41392, are cited by appellants as supporting their contention. Appellants further state that "If Congress had intended that the qualifying phrase should apply to all the foregoing classes it should have been separated by proper punctuation," citing *Blass Co.*

v. *United States*, 12 Ct. Cust. Appls. 481, 482, T. D. 40692, and *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714. Appellants treat the well-recognized rule of grammatical construction as inviolable. In other words, if Congress omits a comma, strict grammatical construction should be given, regardless of the incongruities which may arise. This is not a full and correct statement of the rule as we understand it.

Commas, semicolons, colons, dashes, and other forms of punctuation have their place in ascertaining the meaning of tariff paragraphs, and ordinarily, in such construction, they must, in accordance with the rules of grammatical construction, be given full weight, but if their inclusion or omission under this rule brings an anomalous result contrary to the manifest intention of Congress, the grammatical construction must yield. As has been frequently stated, the master rule of construction is for the court to arrive at the legislative intent. In order that this may be done, numerous rules and doctrines have been adopted and have become the instruments with which the courts labor in the task of construction. Ofttimes these rules and doctrines, when applied, have opposite effects. Then, the applicability and controlling effect or weight of same must be determined. The intention of the legislature, as indicated by the applicability of a rule of construction, must yield if the contrary intent is otherwise ascertained. *Stoeger* v. *United States*, 15 Ct. Cust. Appls. 291, T. D. 42472; *United States* v. *Stone & Downer Co. et al.*, 16 Ct. Cust. Appls. 82, T. D. 42732.

The volumes of judicial decisions are replete with numerous instances where the intention of Congress has been declared by the courts to be the exact opposite of what the punctuation would indicate. So the rule announced by appellants, while a true one, is subject to qualification. Hence grammatical construction as influenced by punctuation may control but should not control where the intention of Congress has been ascertained to have been the contrary. *Irwin & Co.* v. *United States*, 2 Ct. Cust. Appls. 296, T. D. 32039; *Lehn & Fink (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 359, T. D. 40519.

The well-written opinion of Mr. Justice McClelland for the court below, in the following quoted paragraph, points out the fundamental weakness of appellants' case:

In reaching a conclusion as to the intention of Congress in framing this paragraph consideration must be given to the fact that in the popular understanding there is little if any difference between "parasols" and "sunshades," and that understanding is borne out by the definitions of lexicographers. Thus there would seem to have been no good reason for making a distinction between them only in so far as the covering thereof was concerned.

Furthermore, the Government, in an unusually well-prepared brief, has pointed out the legislative history of the "umbrella, parasol, and

sunshade" paragraph and has called attention to the hearings before the committees of Congress, the discussions of the members of the Ways and Means Committee framing the act of 1922, the committee reports on the bill with reference to the paragraph, and many other interesting and pertinent suggestions which are so convincing of the intent of Congress as to obviate, in our judgment, the necessity of full repetition here. Many definitions of umbrellas, parasols, and sunshades are cited, which show substantially what the court below held—that for legislative purposes, they have been treated as if there were little, if any, difference between them. A study of every predecessor paragraph from the Tariff Act of July 30, 1846, down to the present time is convincing of the correctness of the position taken by the court below, and the Government in its contentions here. We quote from some of the predecessor paragraphs:

Tariff Act of 1883, paragraph 491:

* * * umbrellas, parasols, and shades, when covered with silk or alpaca, fifty per centum ad valorem; all other umbrellas, forty per centum ad valorem.

Tariff Act of 1890, paragraph 470:

Umbrellas, parasols, and sun-shades, covered with silk, or alpaca, fifty-five per centum ad valorem; if covered with other material, forty-five per centum ad valorem.

Tariff Act of 1894, paragraph 360:

Umbrellas, parasols, and sunshades, covered with material composed wholly or in part of silk, wool, worsted, the hair of the camel, goat, alpaca, or other animals, or other material than paper, forty-five per centum ad valorem.

Tariff Act of 1897, paragraph 462:

Umbrellas, parasols, and sun shades covered with material other than paper, fifty per centum ad valorem. Sticks for umbrellas, parasols, or sun-shades, and walking canes, finished or unfinished, forty per centum ad valorem.

Tariff Act of 1909, paragraph 478:

Umbrellas, parasols, and sunshades covered with material other than paper or lace, fifty per centum ad valorem. Sticks for umbrellas, parasols, or sunshades, and walking canes, finished or unfinished, forty per centum ad valorem.

Tariff Act of 1913, paragraph 383:

Umbrellas, parasols, and sunshades covered with material other than paper or lace, not embroidered or appliquéd, 35 per centum ad valorem. Sticks for umbrellas, parasols, or sunshades, and walking canes, finished or unfinished, 30 per centum ad valorem.

It will be noted that a comma always was used after the word "shades" or "sunshades" until the act of 1897 was passed and there the word "sunshades" was divided into two words and the comma was omitted after "shades." In paragraph 478 of the Tariff Act of 1909 also, the comma was omitted and the word "sunshades" was used. The portion of the Tariff Act of 1913 comparable to the con-

troversial portion of the act under consideration was copied in the Tariff Act of 1922.

Nothing is contained in the hearings before the committees of Congress or in the debates of either House preceding or connected with the passage of the act of 1897 which indicates, to any extent, that Congress meant to differentiate between umbrellas, parasols, and sunshades in so far as the material with which they were covered was concerned.

In the hearings before the Committee on Ways and Means, Sixty-sixth Congress, 1920–21, Part V, page 3474, the following statement was made:

Whereas the present duty on umbrellas and parasols is specified in Schedule N, paragraph 383, reading in part as follows: "Umbrellas, parasols, and sunshades covered with material other than paper or lace, not embroidered or appliquéd, 35 per centum ad valorem. * * *" We respectfully request that it read as follows: "Umbrellas, parasols, and sunshades covered with material other than paper or lace, not embroidered or appliquéd, 70 per centum ad valorem. * * *"

*What we ask is a change in the rate of duty from 35 to 70 per centum ad valorem.* (Italics ours.)

Mr. Treadway, Mr. Hawley, and Mr. Green, members of the committee, questioned Mr. Hawkes, who appeared before the committee, as follows:

Mr. TREADWAY. The whole parasol comes in at 35 per centum?

Mr. HAWKES. Yes; but as shown here, from 60 to 70 per centum of the total cost of the silk umbrella is in the material.

Mr. TREADWAY. So there is an inconsistency there. *The finished parasol is 10 per centum less than the material that you have to import to make it here?*

Mr. HAWKES. Yes; that is what we point out the absurdity of.

Mr. HAWLEY. We have found several inconsistencies of that kind in the act.

Mr. HAWKES (reading):

"Conditions in this country and abroad indicate that under the present tariff a serious influx of foreign-made umbrellas and parasols is imminent, and immediate action is required to avoid this disaster to the American manufacturers and American labor. Once this market passes out of the control of American hands, it will be very difficult if not impossible to redeem it."

Mr. GREEN. From what country do you expect these importations?

Mr. HAWKES. We expect the most serious competition from Japan, in certain classes. We also expect competition from England, France, and Germany in the *silk umbrella.* (Italics ours.)

The committee report of the Sixty-seventh Congress, first and second sessions, reporting the Tariff Act of 1922, also indicates clearly that umbrellas, parasols, and sunshades were treated together as far as the covering was concerned. (See also the umbrella provision of the Tariff Acts of 1816, 1832, 1846, and 1862.)

It would seem that the omission of the comma after "sunshades" occurred by reason of the fact that in one stage of the enactment of the Tariff Act of 1897, the subject was treated as follows:

Umbrellas, parasols, and sunshades—
    Covered with material composed wholly or in part of silk, etc.
    Covered with other material.

and that later in rearranging the words, in full lines, the dash was omitted without the insertion of a comma. See Congressional Record, 55th Cong., vol. 30, Part II, p. 1255.

It is interesting to note that the Tariff Commission, which afforded information for the framing of the Tariff Act of 1922, in its Dictionary of Tariff Information (1924) gives statistics with regard to the imports of umbrellas, parasols, and sunshades, and quotes the paragraph as follows:

Umbrellas, parasols, and sunshades, covered with material other than paper or lace, not embroidered or appliquéd.

As far as we have been able to observe, no one but appellants has ever contended that the words "covered with material other than paper or lace" were not meant to refer to umbrellas and parasols, as well as sunshades.

Indeed, if commas were regarded as controlling, we would find it very difficult in many paragraphs of the Tariff Act of 1922 to arrive at the congressional intent in such a way as to give a proper and harmonious effect to the act.

The late Judge Smith, whose practical common sense in matters like the question at bar was always illuminating and to the point, in United States v. American Thermo-Ware Co., 2 Ct. Cust. Appls. 9, T. D. 31571, said:

Punctuation is not always a safe guide to the interpretation of laws, as experience shows that they are not infrequently salted and peppered with commas quite at variance with what the lawmaker really intended to say.

In Bough v. United States, 14 Ct. Cust. Appls. 60, T. D. 41575, this court held that Chinese umbrellas, partly manufactured of bamboo, although in chief value of paper, were dutiable at 45 per centum ad valorem under paragraph 407, Tariff Act of 1922. There we said:

The only question involved here is one of law—namely, the articles imported being in part of bamboo but in chief value of paper—should they be classified as articles not specially provided for, partly manufactured of bamboo, or as manufactures in chief value of paper, not specially provided for?

After restating the issue and citing authorities the court said:

Under the doctrine announced in the cases cited, the former is more specific and must prevail.

In the case at bar the merchandise is covered with paper and therefore is excluded from paragraph 1456, and under Bough v. United States, supra, is dutiable under paragraph 407 which is in

accordance with the assessment of the collector and the finding of the court below.

The judgment of the United States Customs Court is, therefore, *affirmed*.