F. VITELLI & SON *v.* UNITED STATES (No. 4267)[1]

United States Court of Customs and Patent Appeals, June 24, 1940

*Eugene F. Blauvelt* (*Eugene F. Blauvelt* and *Albert MacC. Barnes* of counsel) for appellant.

*Webster J. Oliver*, Assistant Attorney General (*Joseph F. Donohue*, special attorney of counsel), for the United States.

[1] C. A. D. 134.

132

[Oral argument April 12, 1940, by Mr. Barnes and Mr. Donohue]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT and JACKSON, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal by the importer from the judgment of the United States Customs Court, Third Division, overruling importer's protest whereby it seeks to recover moneys paid as customs duties to the Collector of Customs at the port of New York on an importation of merchandise referred to throughout the record as "tomato paste."

The merchandise is described in the decision of the trial court as follows:

Ripe tomatoes as they come from the vine are washed and crushed in a machine with a cylindrical sieve of very fine wire mesh. By means of this crushing process the juice of the tomatoes and a portion of the pulp are recovered and the fiber and skins discarded. This juice is then run through a second process of the same nature in which the sieve is even finer. The juice is then piped from the machine to a vacuum kettle and is of the consistency and general appearance of ordinary tomato juice. It is then cooked for some four hours, the vapor being condensed and drawn off. As a result of these processes a thick paste-like mixture is obtained with about one-fifth of its normal water content. It is then packed in cans and sterilized for twenty minutes and in that condition is imported into this country.

The collector classified the merchandise as tomatoes prepared or preserved in any manner, under paragraph 772 of the Tariff Act of 1930, which reads:

PAR. 772. Tomatoes in their natural state, 3 cents per pound; prepared or preserved in any manner, 50 per centum ad valorem.

The importer has alternative claims, these being that the merchandise is properly classifiable as a nonenumerated manufactured article at 20 per centum ad valorem under paragraph 1558 of the act, or as "Vegetables  *  *  *, prepared or preserved in any other way  *  *  *  at 35 per centum ad valorem" under paragraph 775 of the act, which reads:

PAR. 775. Vegetables (including horseradish), if cut, sliced, or otherwise reduced in size, or if reduced to flour, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for; sauces of all kinds, not specially provided for; soy beans, prepared or preserved in any manner; bean stick, miso, bean cake, and similar products, not specially provided for; soups, soup rolls, soup tablets or cubes, and other soup preparations, pastes, balls, puddings, hash, and all similar forms, composed of vegetables, or of vegetables and meat or fish, or both, not specially provided for, 35 per centum ad valorem; sauerkraut, 50 per centum ad valorem; pimientos, packed in brine or in oil, or prepared or preserved in any manner, 6 cents per pound.

The importer, in addition to other testimony, introduced evidence upon the question of commercial designation which will be discussed in due course.

It may be said that appellant's claim under paragraph 775, *supra*, is limited to the provision for "Vegetables * * *, prepared or preserved in any other way and not specially provided for * * *."

The collector's classification appears to have been in conformity with the rule laid down by this court affirming judgments of the United States Customs Court in the case of *Columbo Co.*, *Antonino Badalament* v. *United States*, 21 C. C. P. A. (Customs) 302, T. D. 46819, and *Del Gaizo Distributing Corp.*, *Mennella Bros. Inc.* v. *United States*, 24 C. C. P. A. (Customs) 64, T. D. 48376. It was the view of the trial court that the instant commodity is similar to, if not identical with, the respective commodities involved in those cases, and the Government invokes the rule of *stare decisis*. The application of this rule is challenged by counsel for the importer, who insists, among other contentions, that the merchandise at issue differs from the respective commodities which were there before the court.

The merchandise involved in the *Columbo Co. et al.* case, *supra*, was described in our decision as follows:

It appears from the record that the merchandise, which is imported in barrels or tins, is prepared in substantially the following manner: Mashed ripe tomatoes are strained through a sieve into a cheesecloth bag, and permitted to drain for a period of 24 hours or more, "it is left in these cheesecloth bags and is boiled down. Then it is highly salted, put on platters and laid in the sun until it comes of a consistency that can be easily handled by hand." * * *

It appears from Exhibit 2, the report of a Government chemist, that the involved paste "is composed of partially dried tomatoes or tomato pulp chiefly, salt and a small amount of spices. Salt—15.4%."

In the *Del Gaizo Distributing Corp.* case, *supra*, the merchandise was treated as being similar to that involved in the .*Columbo Co.* case, *supra*. We there quoted from the testimony of a witness as follows:

The tomatoes are first washed, then crushed, and the pulp passed through a series of sieves until all the fibre and seeds and peels are taken off. Then the pulp is dumped in vacuum kettles and boiled under a vacuum until the right consistency is obtained. * * * And then it is taken, put in cans through a filling machine, put in cans, and finished by sterilization.

Appellant here points out that whereas in those cases the commodity was made by treating the tomato pulp, the commodity here is made from the juice, it being insisted that it is the result of two general processes of manufacture, in the first of which the juice is separated from the other portions of the tomato, except that a part of the pulp is retained in the juice, and, in the second, the juice is boiled down to produce a paste-like mixture which is about 20 per centum in volume and weight of the juice, and about 16 per centum of the original tomatoes.

We take note of the differences described, but, after all, we can discern no material difference in the inherent nature of the ultimate product—that is, the product which is imported—from that of the products involved in the prior cases cited, except that it does not

appear here that the pasty mixture is salted, an element which was present at least in the merchandise involved in the *Columbo Co.* case, *supra.*

In the *Columbo Co.* case, *supra*, the material issue involved was whether the merchandise was classifiable under paragraph 772, *supra*, or under paragraph 775, *supra*, as paste composed of vegetables. For the reasons there stated at length, we held the former paragraph applicable. In the *Del Gaizo Distributing Corp.* case, *supra*, where the collector's classification was also under paragraph 772, *supra*, the importers again presented the "paste" claim, but emphasized most strongly the claim that the merchandise should be classified under the provision for "sauces of all kinds" which also is embraced in paragraph 775, *supra*. We found in the latter case that nothing had been presented which differentiated it from the former and affirmed the trial court in sustaining the collector's classification, largely upon the doctrine of *stare decisis.*

The claims in the instant case are as have been stated.

With respect to the claim under paragraph 1558 (the nonenumerated manufactured provision) the trial court correctly held:

Before we can resort to paragraph 1558 * * *, we must search the act in order to determine whether this tomato paste is specially provided for in the law.

It then proceeded to a review of the cases above cited (together with other cases arising under different tariff acts), considered such testimony as it deemed relevant, and rendered the judgment from which the instant appeal was taken.

Notwithstanding the fact that appellant's claim under paragraph 775, *supra*, is made under a clause not involved in the cases so far cited herein, to sustain the contentions made by appellant's counsel would require a construction of paragraph 772, *supra*, different from that which impliedly was given it in those decisions. The effect of those decisions was to make the clause "prepared or preserved in any manner" applicable to tomatoes without reference to the descriptive words "in their natural state" following the word "Tomatoes." To state it differently, the phraseology of the paragraph has been considered to mean that "prepared or preserved in any manner" relates back to the word "Tomatoes" taken alone.

Counsel for appellant advance here a theory which the court heretofore has had no occasion to consider. This theory is that "prepared or preserved in any manner" relates back not to "Tomatoes" alone but to the entire clause, "Tomatoes in their natural state."

The entire argument upon this point is based upon the punctuation of the paragraph, specifically upon the fact there is no comma after the word "Tomatoes." The brief for appellant states:

It must be noted that this paragraph contains no *comma* after the word "tomatoes" and that, therefore, the subject of the paragraph is "*tomatoes in their natural*

*state."* It is obvious, both from common knowledge and from the record in this case, that tomatoes in their natural state may be prepared or preserved and this is particularly evident when consideration is given to the fact that the term "prepared" would undoubtedly include the ordinary whole tomato, sliced or quartered, or hollowed out and chopped vegetables inserted therein in the familiar "tomato surprise" of the restaurants. These things certainly are tomatoes in their natural state, prepared.

Tomatoes in their natural state, *preserved*, are found in the pickled whole green tomatoes of the home canner or in the familiar canned tomato of commerce. A familiar example is found in the peeled whole tomatoes, canned, hermetically sealed and sterilized, as evidenced by Exhibits B and C, or the whole tomato with the peel on, such as those contained in the hermetically sealed cans, Exhibit F.

The foregoing examples, of course, involve preparation for the preserving process and to that extent may be said to be both prepared and preserved, but they constitute ample evidence of the fact that Paragraph 772 as written finds many articles of commerce upon which it can operate, and Congress having legislated in understandable language, is presumed to have intended the result thereof.

Certainly it cannot be said by any stretch of the imagination that a commodity (tomato paste) manufactured from another commodity (tomato juice) is properly included within the term "tomatoes in their natural state; prepared or preserved."

The brief makes comparisons with other paragraphs of the Tariff Act of 1930 respecting the matter of punctuation. It is insisted that the language of paragraph 772, *supra,* "is clear, unequivocal and unambiguous and does not include within its common meaning the merchandise at bar," and various authorities are cited relating to the practice of the courts in cases where statutes are found not to be ambiguous and not to require construction. It is pointed out in this connection with respect to the claim under paragraph 775, *supra,* that a comma appears between the words "Vegetables" and the phrase "prepared or preserved in any other way."

We are unable to acquiesce in the statements of appellant quoted, *supra,* to the effect that the language of paragraph 772, *supra,* if interpreted in the manner contended for, would leave effective the phrase "prepared or preserved in any manner." Appellant's brief gives as an illustration of prepared tomatoes "the ordinary whole tomato, sliced or quartered, or hollowed out and chopped vegetables inserted therein in the familiar 'tomato surprise' of the restaurants." With respect to this the Government brief says:

Sliced and quartered tomatoes and the restaurant creation known as "tomato surprise" are not, and by their very nature could not be, articles of commerce. They are articles of the kitchen.

The court may take judicial knowledge of the nature of tomatoes so prepared, and of the fact that they are not imported in that condition to any known extent, whatever may be the situation as to some vegetables that fall within the terms of paragraph 775, *supra.* Even, however, if it were shown that there were occasional importations of sliced or hollowed out raw tomatoes, we think it would be unreasonable

to hold that Congress in using the word "prepared" had in mind that only such products were intended to be included.

As illustrations of "Tomatoes in their natural state, preserved," appellant refers to the pickled whole green tomatoes of the home canner and the familiar canned tomatoes of commerce. Here again the court may draw upon common knowledge. Tomatoes so treated are not left in "their natural state" in the common understanding of that phrase.

Considering the matter wholly upon the basis of the common meaning of the language of the paragraph, it seems to us that if the phrase "prepared or preserved" be limited to "Tomatoes in their natural state," such limitation would defeat the purpose of the "prepared or preserved" provision. That this phrase was intended to have application admits of no argument.

In the case of *L. R. Markell et al.* v. *United States*, 16 Ct. Cust. Appls. 518, T. D. 43239, this court said:

> The volumes of judicial decisions are replete with numerous instances where the intention of Congress has been declared by the courts to be the exact opposite of what the punctuation would indicate. So the rule announced by appellants, while a true one, is subject to qualification. Hence grammatical construction as influenced by punctuation may control but should not control where the intention of Congress has been ascertained to have been the contrary. *Irwin & Co.* v. *United States*, 2 Ct. Cust. Appls. 296, T. D. 32039; *Lehn & Fink (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 359, T. D. 40519.

Since "prepared or preserved in any manner" appears in paragraph 772, *supra*, and must be held to have an application, and since, if the phrase be limited to "Tomatoes in their natural state," such phrase would have no application, it is not thought necessary to go outside the paragraph itself to determine the phase of the controversy under immediate discussion, but if any doubt could be said to exist we think such doubt is completely resolved by the legislative history of the paragraph.

The Summary of Tariff Information, 1929, prepared by the Tariff Commission for use in formulating the Tariff Act of 1930, pages 1429 to 1438, inclusive, is replete with information concerning the tomato industry in the United States in its various forms. At pages 1437–8 of that volume it is pointed out, with citations of judicial decisions, that the language of paragraph 770 of the 1922 tariff act (forerunner of paragraph 772, *supra*), "Tomatoes * * * all other, prepared or preserved in any manner" covers tomato pulp or purée made by grinding fresh tomatoes, removing the seeds and skins and concentrating the pulp or purée. The merchandise here involved is concentrated from juice containing pulp.

It is a well known part of the "history of the times" that in the preparation of the Tariff Act of 1930 Congress proposed to give to the tomato industry of the United States whatever benefits might be

derived from rates of duty higher than those fixed by the Tariff Act of 1922. The duty on "Tomatoes in their natural state" was increased from one-half of 1 cent per pound to 3 cents per pound, and the duty where prepared or preserved in any manner was increased from 15 per centum ad valorem to 50 per centum ad valorem. These rates clearly seem to indicate an intention to preserve parity between the raw tomatoes and the products resulting from preparing or preserving them. The reports of the respective committees of the House and Senate are clear as to congressional intent. It is useless to lengthen this opinion by detailing those reports here.

We are unable to agree with the contentions of appellant based upon the common meaning of the statutory terms.

Appellant makes the contention that "The word 'tomatoes,' if read as though followed by a comma in paragraph 772, is susceptible to proof of commercial designation," and it is claimed that evidence has been produced here proving that merchandise such as that involved was excluded from the trade understanding of the term "Tomatoes" at and prior to the passage of the 1930 tariff act.

In the *Del Gaizo Distributing Corp.* case, *supra*, we held it to be immaterial whether the term, "Tomatoes * * * prepared or preserved in any manner," had a commercial meaning different from its common meaning, being of the opinion that Congress by using the phrase, "in any manner," intended that all "Tomatoes * * * prepared or preserved" should be classifiable under paragraph 772.

We did not have before us the question of punctuation which has been raised here. Appellant's argument upon this point has been given respectful consideration in connection with the numerous authorities cited in the brief on its behalf, but we see no reason to change the viewpoint there expressed. However, even if we were in error in that holding, it would not change our conclusion in this case, because we agree with the trial court that the questions relating to commercial designation did not have the proper basis. That tribunal said:

Nine of plaintiffs' witnesses testified as to the commercial designation of the term "tomatoes." However all of this testimony was based upon the following assumption:

Assuming that the common meaning of the word "tomatoes" includes not only the fruit of the tomato plant either in its natural state or preserved in its natural state, but also includes paste or sauce made by crushing the fruit and removing the skins, seeds, and part of the pulp and then boiling (evaporating) until a thick putty-like paste results, is the commercial meaning of that term the same or different? Was the commercial meaning of that term the same or different on or immediately prior to June 17, 1930?

We consider it unnecessary to lengthen unduly this decision by a résumé of the testimony adduced in response to this question, inasmuch as it was based upon an assumption and not a fact and further that we are unable to agree with plaintiffs' interpretation of the paragraph. A reading of the same indicates that Congress used the language generally employed in providing for commodities in

their natural state and also for those commodities when something has been done to prepare·or preserve them.

Counsel for appellant presented before us an exhaustive brief, and made elaborate oral arguments upon the several contentions raised, but we feel that the statute taken alone or (if it be assumed to be ambiguous) in connection with its legislative history clearly indicates ·the legislative intent that the merchandise involved should be classified as the collector classified it.

The judgment of the United States Customs Court is *affirmed*.