(C. D. 887)

J. E. Bernard & Co., Inc. v. United States

United States Customs Court, Third Division

(Decided November 3, 1944)

*Barnes, Richardson & Colburn; Wallace & Schwartz* (*Joseph Schwartz* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the defendant.

Before Cline, Keefe, and Ekwall, Judges; Ekwall, J., dissenting

Cline, Judge: This is a suit against the United States in which the plaintiff seeks to recover the duty paid on one painting which was classified as a painting in oil and a work of art under paragraph 1547 (a) of the Tariff Act of 1930 and assessed with duty at the rate of 15 per centum ad valorem under that provision as modified by the trade agreement with the United Kingdom, T. D. 49753. The provision in the trade agreement reads as follows:

PAR. 1547 (a) Paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same, all the foregoing which are works of art, not specially provided for__15% ad val.

Plaintiff claims that the painting herein involved is an original and should be returned free of duty under paragraph 1807 of the Tariff Act of 1930. The defendant contends that the following statement in that paragraph excludes the imported painting from classification thereunder:

\* \* \* and the words "painting," "drawing," "sketch," "sculpture," and "statuary" as used in this paragraph shall not be understood to include any articles of utility or for industrial use, \* \* \*.

The record shows that the advertising manager of the importing firm inspected the painting in Canada, when it was on exhibition there, and purchased it later with the intention of having it reproduced on the cover of a magazine published by the firm with which he was employed. There is no contention that the painting is not an original or that the artist produced it under orders of the importer for use in making a reproduction thereof in the United States.

A magazine having the picture reproduced on the cover was introduced in evidence and marked "Illustrative Exhibit A."

The issue in this case is similar to that in *American Colortype Co.* v. *United States*, 2 Cust. Ct. 132, C. D. 107. In that case paintings in oil were purchased abroad and imported by a manufacturer of printed pictures with a view of reproducing the same by a printing process for use on calendars. The court held that the paintings were articles for industrial use and were therefore excluded from paragraph 1807.

The plaintiff urges that the court erred in that case in the construction of the language of the excluding provision in paragraph 1807 and that consideration should be given to the intent of Congress as evidenced by the tariff history which shows the reason for the changes made in the language of the prototype provision in the Tariff Act of 1922, paragraph 1704. Counsel directs our attention to statements in a pamphlet entitled "Memorandum of Court Decisions Affecting Tariff Act of 1922" which was prepared for the use of the Committee on Ways and Means of the House of Representatives in connection with bill H. R. 2667 which ultimately became the Tariff Act of 1930. On page 66 of that pamphlet the following appears:

PAR. 1704. (Tariff Act of 1922)

In *Cheney Bros.* v. *United States*, Abst. 49369, 47 Treas. Dec. 1064, the court held that certain original designs in water colors imported to be transferred to a press by means of an etching or engraving and printed on silk, and used for industrial purposes, were free of duty under paragraph 1704, and not dutiable as paintings under paragraph 1449, as classified by the collector of customs.

If the provision was not intended to cover paintings or designs for industrial uses, it should be amended. It is believed the following provision, as amended, would meet the situation:

PAR. 1704. \* \* \* and the words "painting", *"drawings"*, *"sketches"* "sculpture" and "statuary" as used in this paragraph shall not be understood to include any articles of utility, *or articles for industrial use,* nor such as are made wholly or in part by stenciling or any other mechanical process; \* \* \*. [Italics copied.]

The information brought to the attention of Congress in the "Memoradum of Court Decisions Affecting Tariff Act of 1922" has been considered by the appellate court in determining the scope and meaning of tariff terms. *United States* v. *Bailey, Green & Elger, Inc.,* 30 C. C. P. A. (Customs) 228, 234, 235, C. A. D. 237.

Counsel for the plaintiff makes the following argument in his brief:

It is noted that the changes suggested above were made in the enactment of Par. 1807, Tariff Act of 1930. It is therefore clear that the purpose of the change was to meet the decision in the *Cheney Bros.* case, Abstract 49369. We therefore proceed to analyze that decision.

An examination of the opinion discloses that that case involved certain water color designs *created as designs for the manufacture of silk fabrics.* Upon proof that the designs were similar to those involved in *Cheney Bros.* v. *United States,* 12 Ct. Cust. Appls. 195, T. D. 40172, it was held that the designs were free of duty under Par. 652, Tariff Act of 1913, or Par. 1704, Tariff Act of 1922, *as sketches or drawings rather than paintings.* It should be noted that both Par. 652 and Par. 1704 contain the proviso "and the words 'painting' and 'sculpture' and 'statuary' as used in this paragraph shall not be understood to include any articles of utility." Reference to the Court of Customs Appeals decision in the *Cheney Bros.* case shows that that decision turned upon the question whether the designs there involved were paintings. If so, naturally they would be excluded from Par. 652, as "articles of utility." The court decided, however, that the designs were "drawings" or "sketches," and that there was no prohibition in Par. 652 against the free importation of original *drawings or sketches,* even though created for utilitarian purposes.

It is clear, therefore, that the purpose of the new language in Par. 1807 was to meet the decision in the *Cheney Bros.* case, and to make certain that original drawings and sketches, as well as paintings, should be excluded from Par. 1807 *if created* for utilitarian or industrial purposes.

There is no indication whatever that it was the purpose of Congress to exclude from Par. 1807 an oil painting created and executed as an original, by a reputable artist, without any thought or idea of using the same commercially or industrially, simply because a business concern found, afterwards, that the painting would make a suitable cover for a trade publication. Indeed, in the case of *Progressive Fine Arts Co.* v. *United States,* 18 C. C. P. A. (Customs) 306, T. D. 44506, it was squarely held that original oil paintings not originally conceived and executed for utilitarian purposes, but imported solely for the purpose of reproducing the same in the form of lithographs, were free of duty under Par. 1704, Tariff Act of 1922, despite the exception in that paragraph of "articles of utility." [Italics quoted.]

An examination of H. R. 2667, which ultimately became the Tariff Act of 1930, shows that paragraph 1704 of the Tariff Act of 1922 was not amended by the House of Representatives when it first acted on the bill, except that the number was changed to 1802. When the bill was before the Committee on Finance of the United States Senate, however, the changes suggested in the "Memorandum

of Court Decisions Affecting the Tariff Act of 1922" were made (the paragraph then being numbered 1808) and a new provision was inserted in paragraph 1547, reading as follows:

(b) Paintings in oil, mineral, water, or other colors, pastels, and drawings and sketches in pen and ink, pencil, or water color, any of the foregoing (whether or not works of art) suitable as designs for use in the manufacture of textiles, floor coverings, wall paper, or wall coverings, 20 per centum ad valorem.

These changes made in the Senate bill were ultimately adopted by the Congress. The new matter in paragraph 1547 (b) was not suggested in the "Memorandum of Court Decisions Affecting the Tariff Act of 1922," above referred to, but it is evident that the changes in the two paragraphs are related. Paintings, drawings, and sketches created for use as designs in industry were excluded from the free-list provision by appropriate language and were inserted in paragraph 1547 (b). In a Senate document entitled

COMPARATIVE PRINT
OF
BILL AS PASSED BY HOUSE
BILL AS REPORTED TO SENATE
AND
TARIFF ACT OF 1922
WITH NOTES

there is a note under paragraph 1547 (b) of the copy of H. R. 2667 as reported to the United States Senate, reading as follows:

NOTE. The articles provided for in this paragraph have been transferred from free list, House Bill, Par. 1802 (Senate Bill, Par. 1808) (p. 359 of this print) and from various paragraphs, depending upon the nature of the article or the component material of chief value.

The documents before Congress at the time the bill was under consideration were not brought to the attention of the court in *American Colortype Co.* v. *United States, supra,* and were not considered.

Counsel for the defendant argues that the language of the excluding phrase in paragraph 1807 is clear and unambiguous and must be construed as written by Congress, citing *United States* v. *Marx,* 1 Ct. Cust. Appls. 152, T. D. 31210; *Edgar Allen Steel Co. (Inc.) et al.* v. *United States,* 16 Ct. Cust. Appls. 26, T. D. 42715; *United States* v. *Max Littwitz, Inc.,* 18 C. C. P. A. (Customs) 341, T. D. 44588. In the latter case, the court said:

It is undoubtedly true, as we have said in the cases above cited and commented upon by the lower court in the *Weil* case, that a change in language ordinarily must be taken as indicating a change in legislative intent. However, this rule is subject to its limitations. If the language used by Congress is so plain as to be readily understood after the changes have been made, there is no necessity for the application of this, or any other rule of construction. Rules of construction are only intended to aid the court when the legislative language

needs construction. Here we are of opinion that the language used by Congress is plain and definite.

However, in *Procter & Gamble Manufacturing Co.* v. *United States*, 19 C. C. P. A. (Customs) 415, T. D. 45578, the court held that where it appears that a literal interpretation of the statute would produce a result contrary to the apparent legislative intent, then the letter of the statute must yield and the legislative intent carried out. The court said:

> The master rule, in the consideration of all statutes, has been to so interpret them as to carry out the legislative intent. *Markell* v. *United States*, 16 Ct. Cust. Appls. 518, T. D. 43239; *United States* v. *Oregon, etc.*, 164 U. S. 526, 539; *Hawaii* v. *Mankichi*, 190 U. S. 197, 213; *United States* v. *Katz*, 271 U. S. 354.
>
> Accordingly, we have held, and this has been the uniform holding of the courts, that if, from a consideration of the language of the statute under consideration, its context, and other statutes in *pari materia* therewith, it appears that a literal interpretation of the statute involved would produce a result contrary to the apparent legislative intent, then the letter of the statute must yield and the legislative intent be carried out. * * *.

In our opinion, the act of the legislature in making a special provision for paintings, sketches, and drawings designed to be used in industry, in paragraph 1547 (b), and, at the same time, amending in paragraph 1807 the language of the corresponding provision in paragraph 1704 of the Tariff Act of 1922, so as to exclude such merchandise from the free-list provision, is indicative of a Congressional intent to exclude from paragraph 1807 the merchandise specially transferred to paragraph 1547 (b).

In *Progressive Fine Arts Co.* v. *United States, supra*, cited by the plaintiff, the court held that the proper classification of paintings must be determined by what they actually were at the time of importation and not by the use the importer made of them after importation. The court said:

> We think that the evidence produced by the importer was sufficient to negative the finding of the collector that the paintings were articles of utility, unless they should be held to be such by reason of their being used for a utilitarian purpose after importation. Under the Government's theory, a painting by Rembrandt or Corot, if imported for exhibition or sale, would be free; but if imported for the purpose of making reproductions of the same, after which the painting was to be returned to the gallery in Europe whence it came, it would be dutiable. No words can be found in the tariff act which would warrant such a construction of the phrase "articles of utility." We think the classification of the paintings must be determined by what they actually were at the time of importation and not by the use the importer made of them.

We find that the painting herein involved is an original oil painting not designed or created for an industrial or a utilitarian use, and we hold that it is free of duty under paragraph 1807 of the Tariff Act of 1930. The ruling in *American Colortype Co.* v. *United States, supra*, is reversed. The protest is sustained. Judgment will be rendered in favor of the plaintiff.

DISSENTING OPINION

EKWALL, Judge: I am unable to agree with the finding of the majority in this case. The wording of paragraph 1807 of the Tariff Act of 1930 as I view it excludes this painting from the privilege of free entry thereunder, and the decision in *American Colortype Co.* v. *United States*, 2 Cust. Ct. 132, C. D. 107, I think should be adhered to. The case of *Progressive Fine Arts Co.* v. *United States*, 18 C. C. P. A. (Customs) 306, T. D. 44506, can have little bearing upon the question here presented because of the fact that there the language construed was "articles of utility." To that phrase Congress has seen fit to add "or articles for industrial use." In view of this change in language we can no longer say that the "classification of paintings must be determined by what they actually were at the time of importation and not by the use the importer made of them."

It is my opinion that the protest should be overruled.