UNITED STATES *v.* DOUGLAS & BERRY *et al.* (No. 1481).[1]

1. PLAIN WOVEN FABRICS—WHAT ARE NOT.

These goods were so woven as to produce a distinctly discernible border the whole length of the piece, and this border, whether in color or plain white, constitutes a figure. Irrespective of the particular machinery employed in producing this effect the goods were figured and not plain woven.

2. NO COMMERCIAL DESIGNATION.

The testimony fails to show that there was, prior to the enactment of the tariff law of 1913, any recognized class of goods in the trade known as "plain woven fabrics."

3. EFFECT OF JUDICIAL CONSTRUCTION.

Prior to the enactment of the present law this court, in White *v.* United States (3 Ct. Cust. Appls., 382; T. D. 32968), had held goods like these in question excluded from the term "plain woven fabrics." It is this decision, rather than an administrative practice, that the Congress must be presumed to have followed.

United States Court of Customs Appeals, April 14, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7608 (T. D. 34818). [Reversed.]

*Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of counsel; *Martin T. Baldwin,* special attorney, on the brief), for the United States. *McLaughlin, Russell, Coe & Sprague* (*Edward P. Sharretts* of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The goods imported in each of these cases are similar in character and were each assessed for duty under paragraph 284 of the tariff act of 1913 covering "all woven articles, finished or unfinished, and all manufactures of flax," and are claimed to be dutiable at a lower rate under paragraph 283 as "plain woven fabrics." The question presented in the case therefore is whether the goods imported are plain woven fabrics.

In the main body of the cloth as woven the threads interlace in the ordinary plain weave, one under and one over. Along each border there appears a stripe or stripes made in some instances of colored threads and in others of uncolored threads, but in each case, whether the threads be colored or otherwise, the whole or a part of the stripe is so woven that each weft thread goes alternately over two or three or four warp threads and then under a similar number of warp threads. The result is that all along these borders the warp threads appear on the surface of the fabric in groups of two or three or four. These warp threads appearing together are not, however, twisted, nor are they superimposed one upon the other, but they are placed in the fabric side by side and parallel with each other along the whole length of the fabric. The result of this method of weaving is to produce a distinctly discernible border the whole length of the piece. Whether it be in color or plain white, it constitutes a figure in the goods.

. The subject matter, plain woven fabrics, has been before this court on two different occasions. In the case of White *v.* United States (2 Ct. Cust. Appls., 327; T. D. 32054) it was held that plain woven fabrics are to be distinguished by their not having twilled or figured effects, citing 1 Spon's Encyclopedia of Manufactures (p. 766) and the Standard Dictionary.

The question again arose in a case of the same title in 3 Ct. Cust. Appls., 382 (T. D. 32968), in which goods were involved in which a figured effect was produced in the weave described as a "chain border." This was held to be, in contrast with the weave of the body, sufficient to take the article out of the category of plain woven fabrics. It was said in that case that the decisions do —

not authoritatively confine "plain woven" to those weaves of a single warp and weft thread passing regularly over and under each other, but extend it to many other weaves, at least when uniform throughout the fabric. The definition quoted, however, and so often approved, not alone, as stated, by this court, but by congressional construction, exacts that such fabric must not by the weave be figured. Unquestionably the weave in the body of this fabric is the most ordinary plain weave. It is equally as clear that such a weave as forms the so-called "chain border" in this fabric has been deemed and held a "plain weave" and so approved by congressional adoption in 1909 (citing cases). In all these cases, however, the particular weave obtained throughout the entire fabric, so that by its use alone the article did not present a figured effect, and could not be said to be "figured." Where, however, the two weaves, each of which when wholly employed in a fabric would result in a plain woven fabric as an entirety, are combined and contrasted in the same fabric they may produce such a result as here exhibited—a figured fabric aptly designated "chain-bordered" crash— to distinguish it from those fabrics without such figure or design. * * *

It is this contrasted difference, however, in the parts of the same fabric, presenting a uniform design throughout the whole effected by the process of its weaving, which renders us unable to say that it is a fabric "not figured" by the weave and therefore a "plain woven" fabric, appropriately called for and by reason of the design or figure woven therein along its border, "chain-bordered crash."

These two decisions clearly hold that the question of whether an article falls within the term "plain woven fabrics" is to be determined by the appearance presented by the fabric as produced by the weave. It is perfectly clear from these decisions that the character of the loom upon which the product is produced or the attachments which are employed in producing it are not in any way controlling. The question is, What is the effect produced by the weave? And as the same language is used in the reenacted provision, paragraph 283, as was employed in the tariff laws of 1897 and 1909, the presumption is that in reenacting this provision for plain woven fabrics Congress intended to adopt the construction which had been given to it by the courts.

An effort is made to distinguish the present case from the later White case, *supra*, by showing that in that case the article was produced by the use of a Darby attachment. We have already sufficiently answered this contention by what has been stated, namely,

that the determining factor is the result produced in the fabric by the weave and not the instrumentality employed.

An attempt was made to show that the goods in question were, prior to October 3, 1913, classified commercially as plain woven fabrics. The Board of General Appraisers found that such classification had been shown. We pass by the question of whether the term "plain woven fabrics" is subject to be varied by proof of commercial classification, which is at least doubtful, particularly in view of the fact of its having had judicial construction before the enactment of the present statute. But we are satisfied that the record in this case falls short of showing any such commercial classification as calls upon us to depart from the ordinary meaning of the term employed as defined by this court. This calls for a brief review of the testimony.

The importers called as a witness to show commercial classification Henry A. Murphy, who testified on direct examination that there was such a thing as commercial classification; that these goods were understood to be plain woven fabrics in the trade. But on cross-examination he testified that he never had known them to be sold by this name; that he never had bought them under the name of plain woven fabrics; that he had never known the term to be used in business transactions in this country prior to the tariff act of 1913, and in answer to a question—

Q. Now, tell us under exactly what circumstances you have ever heard the expression "plain woven fabric" used in your business?—A. The first time I recall it ever being brought to my personal attention was at the time the Government ruled against us on the chain-bordered toweling which is represented in this sample (Exhibit C).

Q. When that term was used was it used in conversation with some one?—A. It was used in conversation with Mr. Fix originally.

Q. I am not caring about your conversations with Government officials. I want to know about your conversations or correspondence with one of your customers prior to October 3, 1913.—A. Well, I was leading up to that, because we couldn't have written anything to them until the Government made it necessary for us on account of the high rate.

Q. I am not asking you about that pattern. I am asking about the use somewhere in some trade transaction, verbal or written, of the expression, the express term, "plain woven fabrics."—A. I am trying to tell that. We had to write to our customers after that time.

*        *        *        *        *        *        *

Q. Give me the name of any customer with whom you had a transaction of that sort.—A. I can't remember now any specific customer we mentioned it to.

Q. Explain the sort of circumstances under which that term was used.—A. We explained to them that we could not supply them with this 561 toweling in question in the chain border any longer, as it had been ruled as not a plain woven fabric.

*        *        *        *        *        *        *

Q. Prior to August, 1912, had you ever, in correspondence or in conversation, heard anybody in the trade use the term "plain woven fabric"?—A. Not in doing business in this country; no.

*        *        *        *        *        *        *

Q. And your personal experience consisted more or less in informing your customers that the customs court had made a certain decision?—A. It was to inform our customers that we could not continue to give them a chain border at the old price, because the Government had ruled that it was not a plain woven fabric.

It will be noted that the sum and substance of this testimony is that the only connection in which the subject of plain woven fabrics had been discussed between the witness and his customers was to apprise them of the terms of a certain decision of this court.

Another witness called was Mr. Douglas, and he testified on direct examination that the term "plain woven fabric" as known in the trade included the goods in question. On cross-examination he testified that none of these goods under any former tariff law had been referred to on his invoices as plain woven fabrics; that they were not sold as plain woven fabrics, were not referred to in his advertising or price lists as plain woven fabrics, and further testified:

Q. Did you ever see it used in any of your buying transactions?—A. Yes, sir.

Q. Where?—A. In asking for quotations when we wrote the manufacturer on the point.

Q. For customs purposes?—A. For customs purposes.

Q. When you wrote abroad?—A. Yes, sir.

*          *          *          *          *          *          *

Q. Name some instance in which the term "plain woven fabrics" has been used by you in a buying or selling transaction.—A. I can't name it in a buying and selling transaction.

Q. In connection with any buying and selling transaction?—A. I have heard it in conversation with customers in discussing the advance in prices. We had to advance our prices.

Q. You tell them that the prices have been advanced because the fabrics are not assessed as plain woven?—A. Yes, sir.

Q. When?—A. Since the passage of the present tariff act.

Q. You never did that prior to October 3, 1913?—A. Had no necessity for it.

Q. Then the expression "plain woven fabric" is one that, as far as you know, has never been actually used in any buying and selling transaction, is it?—A. Our customers to-day come in and ask us questions about it.

The testimony of this witness, therefore, discloses that the connection in which the term "plain woven fabrics" was used in this country related to the rulings of the customs officials and was not in any sense a trade term.

Another witness called was Robert McBratney, who, on cross-examination, testified:

Q. Can you recall any case in which you have talked with the buyer and he has used the term "plain woven fabrics"—that exact term?—A. No. What he would say would be plain crash.

*          *          *          *          *          *          *

Q. I don't want anything which is in his mind or in your mind with reference to the expression "plain woven fabrics" unless that thing which is in the mind of one and the other has found expression in some form or at some period in the history of your business. Tell us where it occurs?—A. He would never use the words "plain woven fabrics." He never would use it.

Q. And you would never use it?—A. I would, possibly, if I were talking to a practical weaver who knew something about technical weaving.

Q. Isn't it a fact that the term "plain woven fabrics" is not a trade term at all?—A. Oh, decidedly it is.    If you were on the other side you would find it out.

Q. It is a technical trade term, and yet they never use it?—A. Not so much in America as they do in the producing countries.

Q. Confine your answer to America.—A. I am trying to tell you just as well as I can.

Q. Confining your answer to America, is the expression "plain woven fabrics" a term that has any peculiar technical trade meaning in the United States?—A. Certainly.

Q. How do you know that?—A. I don't know except that I know it.    I can't tell you how I know it.    I know a great many things, I know a great deal—I have a great deal of technical knowledge, and a great many other things, but for me to tell you how I know them, I couldn't tell you; I couldn't get it into your head.

The testimony of a witness based upon knowledge or information which he is unable to impart is not entitled to great weight.

Another witness called for the importer testified on direct examination:

Q. Now, taking the wholesale trade scattered throughout the country, is or is not there a class of goods bought and sold and known to the trade under the general designation of "plain woven fabrics"?

\*            \*            \*            \*            \*            \*            \*

A. There is a term very well known, "plain linens;" those are the words we use. The meaning is exactly the same as plain woven.

Mr. BALDWIN. I ask that the latter part of the witness' answer be stricken out.

General Appraiser FISCHER.    Strike it out.

Q. The term you have heard is "plain woven linen"?—A. Plain linens.

Q. You have not heard the term used, "plain woven fabrics"?—A. Not until this tariff act was passed by the Government.

We think these quotations from the testimony fail to show that there was, prior to the enactment of the present tariff law, any recognized class of goods in the trade known as plain woven fabrics. They indicate that the term was used only in connection with construing and applying rulings of the Treasury Department and of this court and acquainting customers with such rulings.

Another point made by the importers is that the goods like those in question were during the history of the tariff act of 1909 classified as plain woven fabrics, and that the employment of that term in the present tariff law must be presumed to be a recognition of this administrative practice and the adoption of the construction placed upon the law by the courts.    Force is often given to such administrative practice, but in the present case it is difficult to see how it could have the force contended for, for the reason that prior to the enactment of this tariff law rulings of this court had been made in the two cases cited, and more specifically and definitely in the later case of White v. United States (3 Ct. Cust. Appls., 382; T. D. 32968), that excluded the goods in question from the term "plain woven fabrics," and it is the latter authoritative decision which the Congress must be presumed to have followed rather than the administrative practice.

It results that the decision of the Board of General Appraisers must be *reversed*.