(C. D. 875)

Massabni Bros. & Saba *v.* United States

United States Customs Court, Second Division

(Decided August 30, 1944)

*Lane, Young, & Fox* (*William H. Fox* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges; LAWRENCE, J., dissenting

TILSON, Judge: This suit against the United States presents for determination the question of the proper classification of certain doilies and similar articles upon which duty was levied at 90 per centum ad valorem under paragraph 1529 (a) of the act of 1930, as hand-embroidered articles. The plaintiff claims said merchandise to be properly dutiable at only 40 per centum ad valorem under paragraph 1023 of said act, as manufactures wholly or in chief value of vegetable fiber, except cotton, not specially provided for.

As before stated, the merchandise was classified as hand-embroidered articles. The defendant offered no evidence to support this classification and in his brief, filed herein, makes no contention that such classification is correct. We shall therefore treat such classification as being abandoned by the defendant. Should we take a different view regarding this situation, we would have to hold from an examination of the sample before us that the merchandise was not embroidered.

At the trial of the case counsel for the respective parties agreed that the involved merchandise is composed of flax. It was also conceded that the hemstitching upon the articles in this case is "plain hemstitching." In view of the holding of our appellate court in *United States* v. *Scruggs-Vandervoort-Barney Dry Goods Co.*, 18 C. C. P. A. 279, that the terms "plain hemstitching" and "straight hemstitching" have the same meaning and are used interchangeably, we accept the concession of counsel for the defendant that the hemstitching in this case is "plain hemstitching" as a concession that it is "straight hemstitching."

This leaves for consideration the question only of whether there is one or more rows of hemstitching on the merchandise in this case.

A sample representing the character of hemstitching here involved was admitted in evidence as illustrative exhibit A, and a number of other illustrative exhibits were also admitted in evidence. The plaintiff offered the testimony of three witnesses and the defendant offered the testimony of eight witnesses. In general the plaintiff's witnesses stated that the involved merchandise contained only one row of hemstitching, while defendant's witnesses stated that it contained two rows of hemstitching.

One of plaintiff's witnesses described the production of the hemstitching herein as follows:

This is first a plain piece of linen, and the girl gets that linen and draws one thread on one side.  She leaves two or three threads, as many as you want in the center, and you draw another thread.  Then with the needle, with the same thread, she works it and makes a cluster.  It depends how many you want—three or four threads, a cluster.  She keeps on working, cluster after cluster, until the piece is finished.

The witness further testified in effect that the worker works the thread from one side to the other, all in one operation; that that is the way punto quadro is always made, and that if the one sewing thread is removed there is no hemstitching of any kind left, just loose threads.

The question here presented appears to have been quite definitely answered by our appellate court in *United States* v. *Fallani & Cohn*, 30 C. C. P. A. 141, from which the following is quoted:

According to the testimony on behalf of appellant there is no connection between the first and third rows of withdrawn threads, but each is connected with the center row to finish or complete said first and third rows.  In other words, the finishing of the first and third rows are separate and distinct operations.  The thread which finishes the first row does not move across the fabric farther than the legs of the crosses which form a part of the center row, and from there back again to the first row.  The third row is completed in the same manner.

It thus appears that removing the added thread from the first row would in no way affect the structure of the third row and vice versa.

The trial court in its decision stated:

The testimony in this case is to the effect that in the production of "gigliuccio," the hemstitching on the instant merchandise, three sets of threads must be withdrawn and the threads introduced to finish or complete the hemstitching, or "gigliuccio," must be so arranged as to gather the loose threads into one row as an entirety, and any removal of the thread so introduced would destroy the entire pattern of "gigliuccio."

We are in agreement with the foregoing to the extent that the removal of one of the threads introduced would destroy "the entire pattern of 'gigliuccio' " but it is not the pattern of "Gigliuccio" that is designated in paragraph 1529 (a) but "one row of straight hemstitching," and we believe that the evidence clearly establishes that if the thread introduced in either of the outer rows is removed there would remain "one row of straight hemstitching."  Therefore, as the outer rows are independent of each other, the involved napkins have at least two rows of straight hemstitching.

According to the testimony in this case there is a very definite connection between the first and second rows of withdrawn threads, so much so that if the thread that finishes the first row is withdrawn there is no hemstitching of any kind remaining.  It thus appears that removing the added thread from the first row would completely destroy the structure of the second row and vice versa.  The testimony in this case is to the effect that in the production of the "punto quadro," the hemstitching on the instant merchandise, two sets of threads must be withdrawn, and the single thread introduced to finish or complete the hemstitching, or "punto quadro," must be so arranged as to gather the loose threads into one row as an entirety,

and any removal of the single thread so introduced would destroy, not only the entire pattern of "punto quadro," but also the last trace of hemstitching as well.

Of course, it is not the pattern of "punto quadro" that is designated in paragraph 1529 (a), but "one row of straight hemstitching," but the evidence clearly establishes that if the single thread introduced in either of the rows is removed, there would not remain any hemstitching at all. Therefore, as the two rows are *not* independent of each other, the involved doilies and other articles have only one row of straight hemstitching. This finding is in strict adherence to the rule announced by our appellate court in the *Fallani* case, *supra*.

Although the decision in the *Fallani* case, *supra*, was a reversal of our decision, the reasoning of our appellate court in its decision is sound and logical, and we have no hesitancy in following the same in this case. Based upon an examination of the sample in this case we would have been inclined to hold that the involved article contained two rows of straight hemstitching, but for the decision in *Fallani*, *supra*, following which we hold that the involved merchandise contains but one row of straight hemstitching.

Since the articles before us are excluded from paragraph 1529 (a) of the act of 1930 by reason of the fact that they contain but one row of straight hemstitching, and since they do not appear to be elsewhere specially provided for in said act, we hold the items on entry 879440 described as "P/1 6/12 oblongs punto quadro," irrespective of size, and wherever they appear on the invoice, and the items on entry 886773 described as "P/1 6/12 oblongs punto quadro" and "P/1 scarfs plain punto quadro," irrespective of size, and wherever they appear on the invoice, to be properly dutiable at only 40 per centum ad valorem under paragraph 1023 of the act of 1930, as alleged by the plaintiff.

To the extent indicated the specified claim in this suit is sustained; in all other respects and as to all other merchandise all the claims are overruled. Judgment will be rendered accordingly.

### DISSENTING OPINION

LAWRENCE, Judge: I regret that I am unable to concur in the conclusion reached by my associates in this case.

The question for determination is whether the imported fabric is finished or ornamented with more than one row of straight hemstitching adjoining the hem.

The testimony of the witnesses, with special reference to the number of rows of straight hemstitching on illustrative exhibit A, representing the items in dispute, is so conflicting that little real assistance is to be gained from it.

Three witnesses testified for the plaintiff and eight for the Government. Of the eight witnesses who testified on behalf of the Govern-

ment, three (Jacobs, Smith, and Johnson) gave testimony of little or no value. However, I do not think that the preponderance of competent evidence weighs in favor of the plaintiff. After all, it is largely a matter of opinion whether the fabric has one or two rows of straight hemstitching adjoining the hem.

While there is no dispute as to the method employed to produce the hemstitching on illustrative exhibit A, there is, as indicated above, a sharp division of opinion as to the actual number of rows of straight hemstitching thereon. There is no question that hemstitching of this sort, which is known as punto quadro, has two rows of drawn threads as a necessary feature.

The witness Massabni, a member of the importing firm, first testified on cross-examination that the hemstitching on illustrative exhibit A constituted one row of straight hemstitching, based largely upon the fact that the operator who performed the stitching to finish the decoration on the fabric did so with one thread and in one continuous operation. This criterion was also applied by the other two witnesses for the plaintiff. However, for reasons which will be stated *infra*, I do not regard this as a practical or safe test for determining the question at issue. As a matter of fact, the witness Massabni, after testifying that the stitching on illustrative exhibit A amounted to one row of hemstitching, later admitted that there were two rows, thereby evincing a confusion of mind as to whether there were in fact one or two rows of straight hemstitching.

A majority of the eight Government witnesses testified that there were two rows of hemstitching.

In these circumstances, much light is thrown upon the solution of the question before the court by an examination of the various exhibits which were introduced in evidence, together with authoritative literature on the subject, notably the "Encyclopedia of Needlework" by Theresa De Dillmont, published in 1890 (cited in defendant's brief), which will be referred to later in this opinion. This book has been recognized as an authority in earlier cases. See *United States* v. *Hamburger Levine Co.*, 5 Ct. Cust. Appls. 217, 220, T. D. 34382; *H. A. Caesar & Co.* v. *United States*, 52 Treas. Dec. 237, T. D. 42417; and *F. M. Jabara & Bros.* v. *United States*, 58 Treas. Dec. 375, T. D. 44300.

As a matter of fact, the majority opinion states that—

* * * . Based upon an examination of the sample in this case we would have been inclined to hold that the involved article contained two rows of straight hemstitching, but for the decision in *Fallani, supra*, following which we hold that the involved merchandise contains but one row of straight hemstitching.

It is quite obvious from a careful examination of illustrative exhibit A that if the hemstitching had been finished with but one row of drawn threads, there would have been one row of straight hemstitching.

Consequently, it results in a strange anomaly to hold, as does the majority, that the stitching on illustrative exhibit A, to finish the two rows of drawn threads, creates but one row of straight hemstitching, merely because the work was performed in one operation with one stitching thread. An inspection of the exhibit under a magnifying glass clearly shows a line of stitching running the full width of the lower edge of the upper row of drawn threads, and likewise another line of stitching running the entire width of the upper edge of the lower row of drawn threads. Each stitch groups a cluster of vertical threads to form the holes or openings which are clearly discernible in both rows. The effect is more apparent from an examination of line "4" on illustrative exhibit G. Had the designer of illustrative exhibit A started out to produce one row of hemstitching with one row of drawn threads and finished it, and later decided to draw another row of threads and finish it, can it be doubted that two rows of hemstitching would have been created? In my opinion upon the facts of record, it is a matter of no consequence that the two rows of drawn threads in this case were finished in one continuous operation with one thread. The *effect* produced was two rows of hemstitching, which would be more evident upon examination of illustrative exhibit A if the stitching had been done with a dark, rather than with a light, colored thread.

While it is true that the work performed on illustrative exhibit A produced one row of the *pattern* known as punto quadro, nevertheless, in my judgment, it resulted in two rows of straight hemstitching. It is this circumstance which may have confused the witness Massabni, referred to earlier in this opinion. He may have had the preconceived notion that one row of punto quadro was the equivalent of one row of straight hemstitching, just as in *United States* v. *Fallani & Cohn, Inc.*, 30 C. C. P. A. (Customs) 141, C. A. D. 226, the same witness testified that one row of the *pattern* known as gigliuccio constituted one row of straight hemstitching. (See record in Customs Appeal No. 4406.) In that case our appellate court ruled that gigliuccio was merely a *design* or *pattern* of hemstitching, but that in its fabrication more than one row of straight hemstitching was created, even though it was but one row of gigliuccio.

Plaintiff stresses the fact that in the *Fallani* case, *supra*, the appellate court pointed out "that the evidence clearly establishes that if the thread introduced in either of the outer rows is removed there would remain 'one row of straight hemstitching'," and that "Therefore, as the outer rows are independent of each other, the involved napkins have *at least* two rows of straight hemstitching." [Italics supplied.]

Naturally, the court was deciding that case on the particular facts before it. However, I do not believe the court, by the language above quoted, intended to lay down a definitive rule designed to

cover all cases to determine the number of rows of straight hemstitching. Conceding "that if the thread introduced in either of the outer rows is removed there would remain 'one row of straight hemstitching'," as stated in the *Fallani* case, *supra*, it is equally true that by removing the stitching thread in the fabric in the present case, nothing would remain but two rows of drawn threads.

As I view it, however, the question is not what would *remain* if the finished hemstitching were dissected and the stitching thread removed, but rather what is the condition of the fabric in its imported state? Of course, had the stitching thread been removed before importation, the fabric would not have been hemstitched at all. The fact is, however, that it was imported in a hemstitched condition, and I deem it a matter of no importance whether the two distinct rows of hemstitching may have been created with one thread in one operation or with two threads in two operations. The effect of the stitching was to produce two rows of straight hemstitching adjoining the hem.

Interesting and helpful sidelights are thrown upon this subject by reference to the "Encyclopedia of Needlework," *supra*. The text of pages 25 to 27, inclusive, is graphically illustrated with figures clearly outlining various types of hemstitching, beginning with "Fig. 55. Single hem-stitch" on page 24, to and including "Fig. 68. Single three-rowed open work" on page 27. In describing "Fig. 68" the author states in part: "Make *six rows of hem-stitching*, as in fig. 55; the first and sixth rows to serve as a finish, above and below." [Italics supplied.]

Whether or not the "six rows of hem-stitching" above referred to are created with the use of six stitching threads or a lesser number is of no significance, according to my theory of the case. In any event the finished product has six rows of hemstitching.

It will be recalled that in an earlier case certain cotton gloves with lace cuffs were crocheted with a hook in one continuous process from a spool of thread. Obviously, by removing the thread from the cuff the article would no longer be in part of lace. However, the court was apparently concerned with the condition of the article as it entered our commerce, and accordingly held that it was an article in part of lace. *Alfred Kohlberg, Inc.* v. *United States*, 27 C. C. P. A. (Customs) 354, C. A. D. 111.

The language of paragraph 1529 (a) upon which the attention of the court is focused, reads: "not including one row of straight hemstitching adjoining the hem." There is nothing in that phraseology to suggest that Congress was concerned with the *method* of creating "straight hemstitching," but rather emphasized the number of *rows* of such hemstitching adjoining the hem. The statute is silent as to the number of threads used or the number of operations employed.

To adopt the theory of the plaintiff might well produce an unconscionable result. That is, if a fabric like illustrative exhibit A, finished

with one stitching thread, were to be regarded as containing but one row of straight hemstitching, it would logically follow that if the hemstitching were performed with two independent stitching threads it would be recognized as having two rows of straight hemstitching adjoining the hem. In the first example, the rate of duty would be 40 per centum ad valorem, as claimed by plaintiff, and in the second, the rate of duty would be 125 per centum greater, or 90 per centum ad valorem under said paragraph 1529 (a). Surely, the Congress never contemplated such an absurd result, and the statute should be so interpreted, if it can reasonably be done, to avoid it.

In my judgment, based upon the record in this case, the imported fabric has "more than one row of straight hemstitching adjoining the hem" within the spirit and intent of paragraph 1529 (a), *supra*, and that this conclusion is not in conflict with that reached by our appellate court in the *Fallani* case, *supra*. To hold otherwise would, I believe, produce a result impracticable of operation and confusing in the administration of the statute. With respect to the present hemstitching I am more concerned with the effect produced than I am with the method by which it was accomplished.

In *United States* v. *Douglas & Berry et al.*, 6 Ct. Cust. Appls. 100, T. D. 35342, the court was deciding what was and what was not a plain woven fabric. In the course of its opinion it said:

> An effort is made to distinguish the present case from the later *White* case, *supra*, by showing that in that case the article was produced by the use of a Darby attachment. We have already sufficiently answered this contention by what has been stated, namely, *that the determining factor is the result produced in the fabric by the weave and not the instrumentality employed.* [Italics supplied.]

In effect, the court held that the goods before it were so woven as to produce a distinctly discernible border the whole length of the piece, and that such border, whether in color or plain white, constituted a figure; and that irrespective of the particular machinery employed in producing such effect the goods were figured and not plain woven.

Another case involving woven figured cotton cloth was *Mills & Gibb Corporation* v. *United States*, 14 Ct. Cust. Appls. 197, T. D. 41703. The court said:

> It is undisputed that the striped effect is not occasioned by either a difference in size or color of the threads, but that it is solely due to the fact that in one stripe the thread is twisted to the right and in the other stripe the thread is twisted to the left.

In *Wilson & Son, Inc.* v. *United States*, 14 Ct. Cust, Appls. 234, T. D. 41717, this court had under consideration several different kinds of cloth involving a determination of the issue as to what constituted woven-figured cloth, and there we held that whether a cloth is figured or not *is judged by its appearance to the eye.* Citing *Naday & Fleischer*, G. A. 8405, T. D. 38606, 39 Treas. Dec. 43, and *United States* v. *Douglas & Berry*, 6 Ct. Cust. Appls. 100. It was there held that a stripe is a figure, following the dictionary definitions of a figure and quoting from certain decisions therein cited. [Italics supplied, except citations.]

In *Wilson & Son (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 234, T. D. 41717, the court quoted with approval the following extract from the decision in *Naday & Fleischer* v. *United States*, T. D. 38606–G. A. 8405, 39 Treas. Dec. 43:

Without here deciding that the lines or stripes in the cloth produced by the omission of certain warp and weft threads in the weaving are figures in themselves, it is only too obvious that the checks formed by these open horizontal and vertical spaces are figures within the definition of the term as set forth in said G. A. 8089. It is true in the present case a dobby loom was used, while the cloth in G. A. 8089 was woven on a plain loom; but in both instances the figures have been produced by certain mechanical manipulations in the weaving process, and, as said by the board in G. A. 7222 (T. D. 31588), *"the effect produced and not the means of producing the effect must be the guide and criterion to determine whether or not a fabric is a plain woven fabric."* [Italics supplied.]

In determining the question as to what is embroidery, this court in *Charles F. Waentig* v. *United States*, T. D. 26853, 10 Treas. Dec. 538, reasoned as follows:

* * *. And while it may be true that certain stitches; when combined in numbers in pursuance of a design, result in such an ornamentation as might properly be characterized embroidery, nevertheless one or a number of the same stitches standing alone, or devoted to some other purpose * * * would not of necessity result in the production of that which may properly be termed embroidery. So that it would appear to us that in the determination of that which is and that which is not embroidery *we must of necessity be guided by the effects produced in the particular case, the design which is produced by the work in question, and its effect upon the eye as to whether or not ornamental in pursuance of a design, rather than by the character of the machinery used or the nature of the stitch employed.* [Italics supplied.]

The latter case was cited with approval in *Kayser & Co. (Inc.) et al.* v. *Pevny; United States Impleaded*, 13 Ct. Cust. Appls. 479, T. D. 41368.

Upon the established facts and the law applicable thereto I am of the opinion that the claim of the plaintiff should not be sustained.